———— o • o ————

## The City of Detroit v. Jerome B. Corey.

Although in all ordinary transactions the relation of contractor excludes that of principal and agent, or master and servant, yet there is not necessarily such a repugnance between them that they cannot exist together.

In the case of one contracting with a municipal corporation for the construction of a sewer through one of its public streets, both relations necessarily exist, from the peculiar character of the case. The contractor has no right to make the excavation for the purpose, except as agent of the corporation; and, if proceeded against by indictment for creating a public nuisance, could not justify in his own right, but only as agent of the corporation under the contract.

The power conferred upon the City of Detroit to construct sewers under public streets, is not a power given to the city for governmental purposes, or a public municipal duty imposed on the city, like that to keep its streets in repair, or the like, but a special legislative grant to the city for private purposes. The sewers of the city, like its works for supplying the city with water, are the private property of the city: the corporation and its corporators—its citizens—are alone interested in them: the outside public, or people of the State at large, have no interest in them, as they have in the streets of the city, which are public highways.

The city takes this power with the understanding that it shall be so executed as not unnecessarily to interfere with the rights of the public, and that all needful and proper measures shall be taken, in the execution of it, to guard against accident to persons lawfully using the highways at the time. The city is bound for the performance of these obligations, and cannot rid itself of their performance by executing the power through an agent.

The City of Detroit let to the lowest bidder (as required by its charter) a contract for the construction of a sewer through one of its public streets. The contract bound the contractor at all times to keep the excavation fenced in, and carefully guarded, to prevent accidents, and provided that the contractor should be liable for all damages that might arise from accidents caused by his neglect. For want of proper guards to the excavation, an injury occurred to a person passing through the street, who brought action against the city therefor. — *Held*, that the city was liable.

*Heard January 8th. Decided April 18th.*

Error to Wayne Circuit.

The action was case for damages suffered by the wife. of plaintiff from falling into a ditch or excavation opened on Grand River street, in the city of Detroit.

It appears from the evidence that Grand River street, at the place in question, was graded to the width of twenty-five feet. The south side of the grade, on the right hand coming into the city of Detroit, was occupied by the plank track of the Detroit & Howell Plank Road Company. The ditch was opened on the north side of the grade, and there was a space of eight feet and two inches between the ditch and the plank track.

The plaintiff and his family came into Detroit along this street on Monday morning, November first, about ten o'clock. The ditch was then open, and men were at work on it. The morning was misty, and the plaintiff sat on the side of the wagon farthest from the ditch, between which and him a young man sat holding an umbrella· They left Detroit to return home about eight o'clock in the evening. The day and evening were misty and dark There was opened a portion of the ditch five or six rods long, and about five feet deep. Men had been at work in this vicinity excavating and building a sewer, and had, as they progressed with the work, neglected for six or seven days and nights preceding the day in question, to erect proper guards and lights, or any protection, to prevent accidents. At or near the place where said excavation was on the day in question, plaintiff in returning home met teams coming into the city, and turned off to the right to avoid them, not stopping, but driving forward after he had turned off, and in so doing drove into the ditch where it was five or six feet deep. His wife was thrown out and received the injury complained of.

The proof relative to the circumstances of leaving said sewer or ditch open, appears in the evidence of the following witnesses:

*Andrew C. Walker*, testified as follows:—"I reside in the town of Farmington, Oakland county. I am frequently in the city. I was in the day before election, in the fall of last year. Came in between ten and eleven o'clock in

the morning. I observed a ditch at the point mentioned, near the plank. It was raining. My brother was with me. I had seen the ditch often."

*George Mathews* testified as follows: — "I am Superintendent of the Detroit and Howell Plank Road; am in the habit of passing the place of the ditch in question twice a week; passed it on Saturday before the election last fall; came in on Friday and went out on Saturday. I remember the sewer; it was open on Saturday, also on Friday; but men were at work on it. On Saturday it was open clear to the end, about to the curb-stone on Seventh street. This was early in the morning; men were coming out to fill it. It had been open at that point a considerable time."

*M. W. Hicks* testified as follows: — "I was in town on the day of the accident; saw the ditch; passed it about dusk. There were no guards about it. Was in before, and saw the ditch open. I saw it open October 25th; saw no guard about it then. My idea of the size and position of the ditch corresponds with the description given by other witnesses."

*D. W. Fisk* testified as follows: — "I was along the place where the ditch was several times in the last week of October. I saw it on Saturday night before election. Saw some loaded teams, and went into the ditch to let them pass. This was in the evening. Saw no men at work, and no guards. I saw it again early Monday morning; don't recollect that men were at work then. It was so early men might not have commenced. I thought the ditch was about six feet wide, by three or four rods long; had noticed it open several days when I went out and in. I passed principally mornings and evenings."

The excavation or ditch spoken of was opened in the course of the construction of a public sewer along Grand River street, under the authority of the proper corporate authorities of the city of Detroit. The work was done

under a written contract, bearing date September 7, 1858, which was duly entered into according to the provisions of the charter of said city, between said city of Detroit of the one part, and Daniel Sullivan and Daniel Shanahan of the other part, by the specifications attached to which it was provided among other things, as follows:

"The contractor shall at all times keep the excavation fenced in or carefully guarded, as provided by the city ordinances, so as to prevent accident to the traveling public, and shall be liable for all damages that may arise from accidents in any way caused by neglect of the same."

The construction of the work was, by the contract, to be under the direction of the engineer of the city Sewer Commissioners, and no street was to be obstructed or disturbed except by his direction. And the streets so disturbed were to be regraded, gravelled or planked as the case might be.

The court charged the jury, as follows: That if they believed the facts which the testimony tended to prove, the plaintiff would be entitled to recover ; and further said to the jury, that if the ditch in question was made under the authority of the city in building one of its public sewers, and was more than eight feet from the plank road of the Detroit & Howell Plank Road Company, and was in the traveled part of the public street, it was the duty of the city to see that said ditch was not left open in the night time for an unreasonable length of time, so as to make it dangerous traveling on said street; and if said ditch was so left open in the night time, without guards, lights or beacons, or other protection, and in consequence thereof the plaintiff, without negligence on his part, drove into said ditch, and his wife was there injured, the city was liable.

The defendants then asked the court to instruct· the jury :

*First*—That when the injury is the result of the negli-

gence or misfeasance of a contractor in the building of a sewer, in a public street, according to a contract and specifications between the city and the contractor, the city is not liable; which the court refused to charge.

*Second* — That the defendants, under their charter, were obliged to let the work which is alleged to have caused the injury, to the lowest responsible bidder; that all the diligence they were bound to use in letting the contract is to insert proper clauses in the contract, binding the contractor to use proper care against accidents in the prosecution of the work.

The court charged that the city is bound to let the work to the lowest responsible bidder, but refused to instruct the jury as prayed in the residue of the request.

*Third* — That the city is not liable to keep the streets in repair at all events, but only so far as under their charter they have means to do so — which the court refused to charge, saying to the jury that the city could not by their own direction put the streets out of repair, and protect themselves from liability for want of funds to make repairs; and whether this was the case was a question of fact.

*Fourth* — That the plaintiff, to recover on the ground of the non-repair of the streets, must show that the city had the means to keep them in repair.

The court refused so to charge, saying, that would not be the case if the city themselves had put the streets out of repair.

*Fifth* — That the expenditure of money upon the repair of highways is a matter in the discretion of the city government. The court said that this is so, but has nothing to do with this case. To the charge as given, and refusal to charge, the defendants excepted.

The jury found a verdict for plaintiff, and assessed his damages at $20,000.

*J. L. Chipman* and *G. V. N. Lothrop*, for plaintiff in error :

Mich. 9—M

The liability of the city, if it exists at all, must rest either upon the ground that the contractor is the servant of the corporation, or upon a ground which dominates over all relations of the city — that is, the ground that the city has power to repair the streets.

In support of this position we remark, that the case exhibits no fault in the original design of the sewer, in the powers given to the contractor, nor in the framing of the contract. The cause of the accident was the absence of proper guards and signals to prevent its occurrence.

Whose fault was it, in contemplation of law?

As between the city and the contractor, the contract determines it to be the duty of the contractor to provide these guards and signals.

Whose duty was it as between the city and a third party?

This depends in a great degree upon the relation between the city and contractor.

1. Did the relation of master and servant exist between them?

Our answer is, that a contractor in possession of the subject of the work, controling, its performance, hiring and discharging the workmen, and bound to perform the work according to contract, plans and specifications, is *solely* liable for injuries occurring to third parties by reason of the negligent or tortious acts of himself or his employees. In legal contemplation he exercises a distinct and independent employment, which carries with it, from motives of policy and justice, a distinct and independent responsibility.

This is the rule of law in all cases where the work contracted to be done is legal, and the plan adopted by the contract for its performance is not intrinsically of a nature that the injury complained of must have resulted from its execution.

In some of the earlier cases in England, an attempt-

was made to exclude the owner of the fee from this rule. *Bush v. Steinman,* 1 *B. & P.* 400, appears to be the lead. ing case upon this side, but has since, as we shall see, been carefully and fully overruled in this country and England: — 6 *M. & W.* 503; 9 *M. & W.* 709; 12 *A. & E.* 737; 8 *Q. B.* 960, 974; 1 *Eng. L. & E.* 477; 8 *Eng. L. & E.* 479; 28 *Vt.* 103, 107; 2 *Met.* 353; 3 *Gray,* 349; 1 *Seld.* 48; 4 *Seld.* 222; 1 *Kern.* 435; 4 *Duer,* 424; 17 *Mo.* 121; 2 *E. D. Smith,* 254; 2 *Mich.* 368; 2 *Mich.* 528.

2. The cases *contra* to this doctrine, or which seem to be *contra,* may be simplified into, 1st. Where an officer, or any other person, acts as the mere agent of the corpora‑ tion: — 1 *Seld.* 369. 2d. Where the corporation, owning pro‑ perty, uses it so that it becomes injurious to others: — 3 *Hill,* 538. 3d. Where the plan of the work itself is such that the injury complained of must have resulted: — 3 *N. Y.* 663; 4 *Ohio St. R.* 399.

3. If, then, it is conceded that the corporation is not liable by virtue of the principle of master and servant, shall we turn to the ground of liability to keep the streets in repair?

If so, what is the nature of this power? Is it a purely administrative one, or is it a legislative one, confided to the Common Council of the city for the general benefit, and to be used within the means granted by the charter, in their best discretion?

But before entering this discussion, let us premise that the act of building the sewer was a lawful one, and that the method of its performance, that is, by contract, is the method provided by law. The city thus far is on indis‑ putable grounds. The act of putting the street out of repair, was in this case a legal act. Now, in what direction shall we proceed to render the city liable? The point of departure is from legal ground.

The power to let the work to contract carries with it,

as we have seen, the power to let the charge of the work to contract; in fact, the two things are necessarily identical to a great extent, so much so that we find the courts construing the supervision retained by cities over work contracted for, as not lessening the *sole* responsibility of the contractor. *See cases first cited above.*

Indeed, it is worthy of enquiry what was the intention of the Legislature in compelling the city to let these works to contract? All clauses of the charter ought to be construed together; what, then, was the object of the Legislature in this provision? Now, does the charter of the city impose an absolute duty upon the city to keep any and every street in repair? We hold not. It is a matter within the discretion of the Common Council, and to a certain degree of the citizens themselves. See 4 *Mich.* 442.

In fact any other position would impose upon cities a degree of liability which would depopulate them.

But in what manner must the city exercise the power out of which this liability arises? The charter permits a variety of modes, as, the General Road Fund raised by general tax (*See sub.* 6, *sec.* 1, *chap.* 8, *charter* '57 : District Road Fund for highway labor in each ward (*See sub.* 8, *Ibid*): Street opening and paving funds (*Subd.* 10, 11, *Ibid*): Special assessments for sidewalks (*Subd.* 11, *sec.* 22, *chap.* 5, *charter* '57). So that they may exercise a discretion in many ways as to how the [general power over the streets may be exercised.

In addition to this they are restricted in their power of raising money in every one of these cases, except that of sidewalks. And this limitation of the power of taxation is based upon an express constitutional provision, which is familiar to the minds of the court. Can it be doubted that in the imposition of these taxes the city has a discretion, based alike upon the necessities of the people and their ability to meet them?

The power to repair streets and keep them in order, is

dependent upon the means at their disposal to do so (for under the charter of the city, moneys raised for one purpose can not be devoted to another, nor can debts be contracted, except for specified purposes, none of which are pertinent here); and the means at their disposal are left to be raised in the discretion of the proper authorities of the city.

Towns certainly are not liable at common law for non-repair of roads and bridges; and one reason given is the limited amount they are permitted to devote to repairs. Here then we have a discretion as to this matter of the order and regulation of the street — a discretion embracing the manner, time, material, and the amount—and a limitation as to the amount to be raised, which might put it out of the power of the city to keep the streets in that perfect repair by which alone accidents can be prevented.

It is true that a distinction is endeavored to be taken in some of the cases between towns and cities in this regard — because of the charter of citizens — the principle asserted being that cities *accept* special charters for their own benefit. But this principle is neither logically nor legally correct. There is no acceptance, no compact between the State and municipal corporations; the latter are mere political organizations. See *A. & A. on Corp.* 27, 28, *and cases cited*; *Dartmouth College v. Woodward*, 4 *Wheat.* 636; 7 *Monr.* 336.

As a matter of principle we see no distinction between the cities and townships; if the power to do an act raises an obligation as to the one, it ought as to the other.

4. But let us grant that this liability, to repair at all events, does exist. How shall we construe it in relation to other liabilities and duties? On what principle shall it overrule and have precedence? Does it do so intrinsically, all the time, at every moment? If it does, then the city has no right even to excavate a street for sewerage, be-

cause it puts it out of repair, and it is the duty of the city to keep the street in repair. But we have seen that the city has the right; therefore to that extent at least, and to the extent of space and time necessary to finish the work, the city may keep the street out of repair. So that this duty gives way to some extent to a power of the city which is discretionary — that of building sewers.

But even here it will be urged that the liability accompanies the city; that it only gives way so far as absolute necessity demands. This brings us to the very issue, to the method of the performance of the work in this case by contract. We are positively bound to put the work into the hands of a contractor — the lowest responsible bidder. And when we do this, we do in our private ministerial capacity just as an individual would do; just as we would let the building of an engine house, or the manufacture of an engine. Now we have seen that an individual would not be responsible for the act of his contractor in the present case. And even if it was on his land he would not be responsible. Yet if the city is liable to keep its streets in repair, the individual is equally liable to use his property so that no other shall be harmed by it. Where is the distinction, and why do not the cases above cited apply to the city as well as to the parties, in whose names they are reported?

5. If this liability exists upon the part of the city, what is the extent of it? Does it depend npon general principles, or upon the special circumstances of the case?

If on general principles, then the law of contracts does not exist in full force so far as the city is concerned, because the *sole* responsibility of the contractor is part of that law.

If it depends upon special circumstances, what are they?

*Maynard & Meddaugh*, for defendant in error:

The city of Detroit has the sole control, exclusive of

the State or county, of all its highways and streets, with full power to open, alter, work, improve and repair them: See *Charter, pp.* 31, 32, 34 and 35.

It has adequate means and agencies for the discharge of this duty. *First.* It has power to raise and expend a fund for the general repair of the highways: — *Charter*, 28, 31, 45, 72, 73. *Second.* The fund thus raised — the "Detroit Road Fund," — is according to the rates for township roads and highway purposes, and is to be presumed adequate to cover the expenses of working and repairs: *1st Comp. Laws*, 346–7. *Third.* When extraordinary alterations and repairs are needed, as in the case of a sewer, there are especial and sufficient provisions for meeting the cost of them: — *Charter, pp.* 72, 73, 75, 34. *Fourth.* In addition to all these, then the corporation has power to collect, by special assessment upon the owners of adjacent property, the costs and expenses of extraordinary improvements and repairs: — *Charter, pp.* 31, 32, 75, 90.

The corporation having thus entrusted to them the sole control of the highways, and being provided with adequate means for repairing them, the duty and obligation to keep them in repair follows by necessary consequence. The language of the charter, though permissive, imposes the same duty and obligation as though in express terms the repairs had been directed. The power conferred carries along with it the duty of its faithful execution: — 3 *Hill*, 614; 5 *Sand.* 289; 22 *Penn. St.* 388.

This duty and its consequent liability are not lessened, nor in any way impaired, by any obligation on the part of the city to have the work done by contractors.

*First.*—Because there is no absolute obligation to have the work of repairing streets or constructing sewers done by contract. The corporation *may* do the work by contract, and if this mode of doing the work be adopted, then the contract is to be given to the lowest bidder, *if unexceptionable and able to offer adequate security.* But

there is nothing in the Charter to inhibit the Common Council from doing these things by agents directly employed for such purposes.

*Second.* — But if the corporation is obliged by the Charter to have this class of work done by contract, its liability is not thereby lessened, for, 1st. It had the right to reserve the control and supervision of the work, not only as to the results, but as to the manner of performing it. See *Charter, pp.* 24, 34, 35. And this was done in the present case. 2d. The city had full discretion as to the *person* to be selected as contractor. It is not obliged to let the work to the lowest bidder unless he be, in the full sense of the term, *responsible*, and such as the Common Council may deem competent for the performance of every such contract : — *Charter, p.* 77.

*Third.* — The city had full control over the security, as to amount and condition : — *Charter, pp.* 13, 77.

*Fourth.* — A party injured by the acts of the contractor thus selected and controlled by the city, can have no resource to the sureties of the contractor. He is neither party nor privy to the contract : — 1 *Seld.* 49.

*Fifth.* — If, then, the corporation select its contractor, fix the terms and amount of his security, take such security for its own protection and indemnification, is authorized to make the security answer a liability like this, and, in fact, does take security to this effect, and retain the direction, control and supervision of the work, it is submitted that its liability for the negligence of the contractor is as great as for the negligence of an agent employed directly by itself.

The court will notice that the city in this contract reserves a much larger power of control and direction over the work than in the cases of *Kelly v. Mayor, &c.,* 1 *Kernan,* 435, and *Peck v. Mayor, &c,* 4 *Selden,* 222.

In this view of the rights and duties of the corporation, its legal liability to repair the streets and keep them

in a safe condition, and for damages for a neglect of this duty, is clearly settled. 1st. The liability of this city under its Charter, and under the actual provisions of the contract, is to be distinguished from cases in which a party lets work to a contractor, and has no right to reserve, and does not, in fact, reserve a right of supervising and directing the work. 2d. It is to be distinguished from those cases where a personal judgment is sought to be recovered against public officers for their official acts, and where they have no adequate means of indemnification or compensation.

The reason assigned for exempting public officers in certain cases from personal liability, on the grounds of the hardship of their situation, and having no means of indemnity, establish the propriety of such redress in this case.

The city accepted the Charter, and by virtue of the powers and franchises conferred upon it, caused one of its streets to be put out of repair in the construction of a public sewer, and no reason can be assigned why it ought not to be held liable in damages for a careless and negligent execution of its powers. The following cases clearly recognize such a liability: — 8 *Barb.* 651; 24 *Ala.* 113; 11 *Wend.* 541; 3 *Duer,* 406; 3 *Selden,* 493; 1 *Sand.* 226; 16 *N. Y.* 159, 161.

If the city be liable to keep its streets in repair, it is of no importance whether the want of repair is occasioned by the construction of some public work done by its agents or contractors, or by an omission to work the streets, provided it is chargeable with negligence for not making the repair: — 22 *Vt.* 458; 24 *Vt.* 155; 23 *Pick.* 24.

Whether the city be or be not liable to keep the streets in repair generally, and conceding, for the sake of argument, that in general it is liable to repair only so far as it has the means actually on hand to pay for repairs, still, in the present case, the city is liable on special grounds.

The injury in this case arose, not from any negligent action of a sub - agent of the contractor in the execution of the work, but was the result of an excavation in the highway made by the contractor, under the direct and explicit authority of the Common Council. The city could not, by its own act or direction, put the street out of repair, by an actual excavation, and then not be liable for the consequences. There is a plain distinction between such a case and those cases in which the want of repair of highways has been produced by causes not within the control of the corporation. In such a case its means are not limited to the ordinary highway fund, but by the special provisions of its Charter it may make such assessments as are adequate to the faithful performance of its duty. To hold otherwise would virtually abrogate that wholesome maxim that each should use his own so as not to injure his neighbor. Had the work been done by the city through its agents, then its liability would be conceded, upon the ground that it had the choice of its agents, of the business to be performed, when and how it should be done, and the right at all times to discharge its agents. The Common Council, in the construction of these works may, in fact, determine to whom the contract shall be given, what work shall be done, the time and manner of doing it, reserve the control and supervision of the work, determine for what causes the contract shall be declared abandoned.

That the principal is liable if he has the supervision of the work, though done by contractors, See 1 *M. G. & S.* 578 ; 3 *Camp.* 402 ; 4 *El. & Bl.* 570.

If there be any doubt upon the adjudged cases as to the obligation and liability of the city, *public policy* requires that they should be fixed on it in a case like this.

The safety of the citizen requires this. He has no remedy in such a case, unless the city is liable, when the

damages are not caused by the carelessness of those in the immediate execution of the work. If the city be not liable, the provision in the contract requiring the contractor to keep up lights and guards can by no possibility have any legal efficacy or effect. The city can only recover nominal damages against the contractors for neglecting to perform this part of the contract, until it is made legally liable for the payment of damages.

There is no hardship in this rule, as applied to the city of Detroit. Because, 1st. The city can supervise and control the manner of performing the work, as it did, in fact, reserve the right to do in this case. 2d. It can select the agent and contractor, and thus secure a competent person. 3d. It can exact full and adequate security according to its own discretion, and covering such a contingent liability for damages. 4th. The members of the Common Council, or its other officers are not personally sued, but satisfaction is sought only out of the general property of the city.

The delegation of the power of control over the streets to a municipal corporation (presumptively for the benefit and with the assent of its citizens), has corresponding duties and liabilities which it can not avoid or evade by the employment of subordinate agents or contractors: — 16 *N. Y.* 261 ; 17 *N. Y.* 108.

*C. I. Walker*, on same side :

1. At the common law, parishes by prescription were bound to repair highways : — 2 *T. R.* 106. It has been held that no such obligation rests upon towns in this country, so as to make them liable for injuries for want of repair, save by express provisions of the statute : — 8 *Barb.* 645 ; 4 *Mich.* 557 ; *contra,* 5 *W. & S.* 545. But with municipal corporations, like cities, where special and peculiar privileges and franchises are conferred, and power is given to repair streets, that power, although conferred only in per-

missive terms, creates an absolute duty, and wherever there is an absolute duty of this kind, there is a corresponding liability for the neglect to perform that duty: — 11 *Wend.* 539; 3 *Hill*, 612; 1 *Denio*, 601; 5 *Seld.* 163; 35 *N. H.* 69.

The principle upon which this class of cases rests is that the duty, whether express or implied, forms a part of the consideration of the peculiar franchises, and the performance of the duty is a condition of the grant: 16 *N. Y.* 161; 4 *Mich.* 562. And whether the duty is expressly imposed or only by implication, as by words of permission, the result is the same, and for the neglect of such duty the corporation is liable to the party injured by such neglect, and he has a right of action: —See *cases above cited*; also *Cowp.* 86; 5 *Bing.* 91; 3 *B. & Adol.* 77; 1 *Bing. N. C.* 222; 16 *N. Y.* 158; 2 *N. Y.* 169; 3 *Seld.* 497; 17 *Ill.* 143; 22 *Penn. St.* 385; 24 *Ala.* 112; 6 *Iowa*, 443. This liability on the part of the cities is distinctly admitted in those cases which deny a similar liability on the part of towns: — 8 *Barb.* 645; 4 *Mich.* 557.

It is very clear under these decisions, that the city would be liable for an injury arising from its neglect, for an unreasonable length of time, to repair the street in question, leaving the ditch made in it unprotected in the night time by guards or lights, if the ditch had been made directly by its employees and without the intervention of contractors.

2. In the view we take of the case, it is unnecessary for us to discuss the vexed question, that has so occupied the attention of courts from the time of *Bush v. Steinman* to the present, whether a contractor to perform a piece of work is so far the agent of the person for whom he does the work, that the latter is responsible for the negligence of the former in its execution; for that question is not involved.

We might perhaps successfully contend that the city, by providing that "the construction of said work shall be under the direction of the engineer of the Sewer Commissioners," a city officer, have themselves assumed the entire responsi-

bility of its execution; but we do not propose to discuss that question: — 23 *Pick.* 34. Our position is this — the city charter imposes upon the city the duty of keeping the streets in repair, and by the acceptance of that charter they have by implication consented to this condition. They can not delegate this duty to others, so as to relieve themselves from the responsibility of its non-performance.

If the ditch in question had been dug by a stranger — a mere wrong doer—and the city, for an unreasonable length of time, had neglected to repair the street, or to protect travellers from injury in consequence of such want of repair, they would be liable in damages to any party injured thereby. Their responsibility certainly is not lessened by the fact that the excavation was made by their authority, and under the direction of their engineer. The danger to the public and the traveller arises from the very nature of the work, and this is a danger that the city were bound to guard against in the discharge of a duty, and failing to do so, the city is clearly liable: — 3 *Seld.* 493; 17 *N. Y.* 104; 38 *Me.* 219. These cases fully settle the liability of the city, unless they are relieved from that liability by the following proviso of the contract: "The contractor shall at all times keep the excavation fenced in or carefully guarded, as provided by the city ordinances, so as to prevent accident to the travelling public, and shall be liable for all damages that may arise from accidents in any way caused by neglect of the same." Without this clause it clearly was not any portion of the duty of the contractor to guard the public against the danger arising from the excavation. It was a lawful act, and there was nothing wrong in the manner of its execution: — 8 *O. S. R.* 358.

What is the effect of this proviso?

1st. It did not make the contractors liable to the plaintiff, or any other party injured by their failure to perform this part of their contract; and this for want of privity. Their liability arises *from the contract, and to the party*

*thereto*, and not from a breach of duty that gives a right to a party injured: — 8 *O. S. R.* 358; 1 *Seld.* 48; 24 *Vt.* 155; 35 *N. H.* 69; 2 *Comst.* 169; 4 *Mich.* 441.

2d. Its object clearly was, to indemnify the city against just such liabilities as this, and was doubtless suggested by *City of Buffalo v. Holloway*, 3 *Seld.* 493.

3d. It does not, and can not from its very nature, release the city from its *primary* obligation to keep its streets in repair. This is a duty, from the performance of which they can not escape by delegation: — 17 *N. Y.* 114; 3 *Gray*, 353, 366.

The principles applicable to this case are well illustrated by a series of well considered cases in relation to the liability of towns for obstructions to highways made by railroad companies, authorized to make the obstructions, and whose duty it was, as between the companies and the towns, to so guard and protect the highways thus obstructed, that no injuries shall happen to travelers or to the towns.

It has been repeatedly held, in cases where injuries had been caused by the negligence of the railroad companies in not guarding excavations or obstructions by proper railings, &c., 1st, that the town is primarily liable; 2d, that the towns have a right of action against the railroad companies: — 16 *Pick.* 170; 23 *Pick.* 84; 22 *Vt.* 458; 24 *Vt.* 155; 7 *Fost.* 204; 35 *N. H.* 313; 40 *Me.* 96.

Other cases show that towns are not relieved from liability from the fact that the obstruction is caused by the wrongful act or neglect of others, where they have had reasonable notice thereof: — 32 *N. H.* 59; 35 *N. H.* 74. As to what is reasonable notice, see the cases last cited above, and the following, which establish the proposition that no actual notice need be proved, and the towns or cities are bound to take notice promptly of existing defects and obstacles. This is a part of their duty: — 1 *Mass.* 154; 4 *Gray*, 596; 32 *Me.* 272; 40 *Me.* 179; 35 *N. H.* 72; 17 *How.* 161.

3. The refusal to charge "That the city is not liable to keep the streets in repair at all events, but only so far as under their charter they have means to do so" — the court instead "saying to the jury that the city could not by their own direction put the streets out of repair, and protect themselves from liability for want of funds to make repairs, and whether this was the case was a question of fact"—was clearly correct, although the *best* reason may not have been given for it; but a wrong reason for a correct charge is no error : — 31 *Penn. St.* 517. The city have an unlimited power to raise money for the repairs of streets, by assessments upon adjacent property : — *Laws of* 1857 p. 96, § 11. They can only raise $50,000 per annum for the purposes of paving, &c., but there is no limit to the power to raise for purposes of repairs : — *Ib.*, *p.* 123, § 8. If there was any such limitation, the city were bound to show that they had exhausted their resources before they could claim to be exempt from the discharge of an absolute duty, which they had undertaken to perform; as the commissioners of highways did in 7 *Wend.* 474. But no case, we apprehend, can be found, establishing the principle that the want of means excuses a municipal corporation *of this character* from a clear duty *of this kind.* They occupy a very different position from township commissioners.

The reason given by the court below is itself a sufficient answer to the request. The city can not by its own act tear up its streets for an improvement, and leave them in a dangerous condition, and exempt themselves from liability upon any such ground.

Manning J. :

The only question in this case is the liability of the city.

It was said on the argument that the contractors, and not the city, are liable, as the sewer was being constructed by them under a contract with the city when the accident occurred.

When the relation of principal and agent, or master and servant exists, the rule of *respondeat superior* is applicable, but not when the relation is that of contractor only. In all ordinary transactions the relation of contractor excludes that of principal and agent, or master and servant. But there is not necessarily such a repugnance between them that they can not exist together. The difference between them is, that a contractor acts in his own right and for himself, whereas an agent or servant acts for and in the name of another.

In the case before us, both relations exist, and must necessarily exist from the peculiar character and circumstances of the case. The contractors not only acted for themselves, but at the same time as agents for the city, under the power given it to construct sewers in its streets, which are public highways. They had no right to make the excavation they did, except as agents for the city; and had they been proceeded against by indictment for creating a public nuisance, they could not have justified in their own right, but would have had to justify as agents of the city under their contract.

It is also to be observed that the power under which they acted, and which made that lawful which would otherwise have been unlawful, was not a power given to the city for governmental purposes, or a public municipal duty imposed on the city, as to keep its streets in repair, or the like, but a special legislative grant to the city for private purposes. The sewers of the city, like its works for supplying the city with water, are the private property of the city — they belong to the city. The corporation and its corporators, the citizens, are alone interested in them — the outside public or people of the State at large have no interest in them, as they have in the streets of the city, which are public highways.

The donee of such a power, whether the donee be an individual or a corporation, takes it with the understand-

ing — for such are the requirements of the law in the execution of the power — that it shall be so executed as not unnecessarily to interfere with the rights of the public, and that all needful and proper measures will be taken, in the execution of it, to guard against accidents to persons lawfully using the highway at the time. He is individually bound for the performance of these obligations; he can not accept the power divested of them, or rid himself of their performance by executing it through a third person, as his agent. He may stipulate with the contractor for their performance, as was done by the city in the present case, but he can not thereby relieve himself of his personal liability, or compel an injured party to look to his agent instead of himself for damages.

It was also said on the argument, that the city was required by its charter to let the contract to the lowest bidder. I agree with counsel in this construction of the charter, when the work is done by contract, and the contract price exceeds $200, as it does in this case. But I do not see in it any intention of the Legislature to make the contractor only liable, and to relieve the city, which is benefited by the power, of its liability. The object of this provision in the charter is to protect the city against frauds too frequently concocted between faithless public functionaries and contractors, by which the public is sometimes made to pay much more for a thing than it is worth.

In *Lesher v. The Wabash Navigation Company*, 14 *Ill.* 85, the company was authorized by its charter to enter upon certain premises, and take therefrom material for the construction of its works by making compensation therefor. The company contracted with certain individuals to build a dam, the contractors agreeing to furnish the material, which was taken by them from the land of the plaintiff, who claimed compensation of the company, and the court held the company liable, on the ground that the contrac-

tors were the servants of the company. Caton J., in delivering the opinion of the court, says: "The contractors were none the less the servants of the company, because they were doing the work by contract, and for a stipulated price. The work was still done by the company, and under the authority of the charter. The privileges which the charter conferred upon the company to enable them to do the work, devolved upon the contractors for the same purpose. The very erection of the dam across the river was an obstruction to its navigation, and would have been unlawful, but for the authority conferred by the charter. Had the Culberstons been prosecuted for damages occasioned by reason of such obstruction, they would immediately have sought protection under the charter." * * * "Had a cause of action accrued to an individual by reason of the obstruction erected in the river, the company whose work it was would have been liable as much as if they had erected it with their own hands."

In *Bailey v. The Mayor, &c., of the City of New York,* 3 *Hill,* 531, the action was for damages done the plaintiff by the breaking of a dam erected across the Croton River, to supply the city of New York with water. The defense was, that the action could not be maintained upon the principle of respondeat superior; 1st, because the water commissioners, who had charge of the construction of the work, were appointed by the State and not by defendants; and, 2d, if they were to be regarded as having been appointed by defendants, that defendants, in building the dam, were acting in a public capacity, and like other public agents, were not responsible for the misconduct of those necessarily employed by them. Both points were ruled against defendants. Nelson Ch. J., in delivering the opinion of the court says: "The powers conferred by the several acts of the Legislature, authorizing the execution of this great work, are not, strictly and legally speaking, confer-

red for the benefit of the public. The grant is a special, private, franchise, made as well for the private emolument and advantage of the city, as for the public good. The State, in its sovereign character, has no interest in it. It owns no part of the work. ·The whole investment under the law, and the revenue and profits to be derived therefrom, are a part of the private property of the city, as much so as the land and houses belonging to it situate within its corporate limits."

This decision was afterwards affirmed in the Court of Errors, the Chancellor holding the defendants liable as the owners of the land on which the dam was erected, and other members of the court on the ground stated by Ch. J. Nelson in his opinion.

In *Storrs v. The City of Utica*, 17 *N. Y. Reports*, 104, which is a case of a sewer constructed in a public street under a contract with the city, and is in all respects analagous to the one before us, the city was held liable. The liability of the city is put on the ground of its duty to keep its streets in repair, and a like duty was urged on the argument as the ground of liability in the present case. While I concur in the correctness of the conclusions to which the Court came in that case, I am unable to see how the execution of the power given to the city to construct sewers, is, of itself, an infringement of its duty to keep its streets in repair. The duty and power must be so construed as to be consistent with each other, and not repugnant the one to the other.

In *Lowell v. Boston and Lowell Railroad*, 23 *Pick.* 24, defendant was held liable for an injury to an individual by falling into a deep cut made in a highway, in the construction of the company's road by a contractor.

This case is commented on and approved by the same court in *Hilliard v. Richardson*, 3 *Gray*, 349. Thomas J., after stating the facts in the case, says (p. 353) "Now it is plain that it is the corporation that are entrusted by

the Legislature with the execution of these public works, and that they are bound, in the construction of them, to protect the public against danger. It is equally plain that they can not escape this responsibility by a delegation of this power to others."

In *Reedie v. The London and North Western Railway Co.*, 4 *Exch.* 244; *Barry v. The City of St. Louis*, 17 *Mo.* 121, and perhaps some other cases, the corporation was held not to be liable. The distinction does not appear to have been taken, in these cases, between ordinary contractors who, doing only what it is lawful for any one to do, act in their own right, and contractors under a special legislative power given for private purposes, rendering that lawful, in the donee of the power and those acting under him, which would otherwise be unlawful. The judgment of the court below I think should be affirmed.

MARTIN CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J.:

I can not concur in the result arrived at by my brethren in this case. It appears to me to come clearly within that class in which the employer, having made a fair and proper contract to do a lawful act in a lawful way, is not liable where the contractor violates his duty to the injury of a third person.

The city of Detroit is not a private corporation established for private ends, but a public corporation established for the better government of a particular district, and all its powers are given because deemed essential for public purposes. The duties imposed upon it are all coordinate, and while required to be exercised harmoniously, are of equal dignity and importance. The law does not recognize any principle whereby one shall be regarded as subordinate to another. In carrying out any public work it may often happen that easements and improvements of a differ-

ent character may be for the time interfered with. In such case one work must not stop because it interferes with another. No street can be paved, nor water pipe laid, nor sewer built, without an interference during the process with the ordinary use of the highway. The city is no more bound to keep up the highway, than it is to build the sewer, or lay the water pipe, when in the exercise of its discretion it has determined these to be required by the public health or necessity.

In the case before us, the city entered into a contract with private parties for the construction of the sewer in question. It is admitted to have been properly planned, and it is also beyond question that nothing was omitted in the specifications or in the contract which was necessary either for convenience or safety. Had the contract been carried out fully, the accident could not have happened. The city, then, is not at fault for omitting any precautions in its power, or any act which could be done to guard the faithful performance of the work without peril to others. And if it is liable at all, it is upon the theory that the contractor is so far a mere agent, that the city is responsible for his unfaithfulness, and its consequences to all third persons, and that such responsibility exists although the work itself was lawful and lawfully put under the contractor's control. The charter contemplates that all expensive public improvements shall be made by contract upon biddings. The evident object was to secure the performance of such work by the lowest bidder, and to prevent the city from exercising favoritism, or using funds for corrupt purposes, as well as to prevent the employment of a host of persons under pretext of doing service. The suppression of fraud and the exercise of economy were both designed. But it was, for whatever reason, done to keep the city from having its own employees. The municipal authorities could plan all public works, and prescribe all their details, but they could not *build* them: that must be done by private contractors.

It certainly would strike most persons that, a power of this kind, which *must*, under the charter, be exercised by private parties, is not a public power, and can involve no public responsibility. The doctrine of agency is not compatible with the want of power in the principal. Neither do I perceive how, when such powers are taken from the city and put in private hands, they can be partially severed, allowing the city to do a portion of the work, and the contractors the rest. . The evil to be avoided would not be remedied by any such process. If a sewer is to be constructed, the work must embrace everything essential to its proper and lawful completion. And if no sewer can be properly built in a city thoroughfare without certain guards and fences, the erection of these is a necessary precaution incumbent upon the contractor. They must be changed and removed daily as the work progresses, and involve the necessity of workmen, whose employment would not only interfere with the charter, but who could not safely or prudently be left independent of the management of the main work. The suggestion made by one of the recent decisions, that a city can not get rid of the performance of its duties by shifting them off under the pretext of a contract, loses all of its force, if it has any, where the law itself has fixed the duty elsewhere, and not only sanctions but requires the contract.

The doctrine is not disputed by my brethren that, where the relation is merely one of contract, there is no liability against the employer for the negligence or misconduct of the contractor. But the decision seems to be based upon the theory that there is here more than a contract; that the city has received certain privileges which are upon implied conditions, and that those conditions are not susceptible of performance without the action of the city, through agents for which it is responsible. I can not accede to this doctrine.

The city is entirely the creation of statute. It holds.

no privileges intact. All its powers may be removed, modified, or confided to other hands at any time. The Legislature bestows upon each municipal corporation the powers which are deemed proper to be exercised by it, precisely as upon a township or other local body. Neither the city nor its inhabitants can set up, against a legislative removal of authority, that money has been expended or debts incurred relying upon it. The citizens have no voice in the matter. And the duties of such a corporation, imposed entirely by law, are in no sense distinguishable in their character from like duties exercised by any other local authority. They are not assumed by contract, but imposed by authority. And why a contract made by a city within its sphere, differs from one made by any one else, I am not able to perceive.

It is undoubtedly true that in many cases where a franchise is granted to a private corporation for its own emolument, and express duties are connected with the exercise of that franchise, the corporation is bound to see them performed; and the same obligation would perhaps apply to duties arising by necessary implication. But this rule is by no means of universal application. A corporation authorized to do an act is usually authorized to do it as an individual could, and if he could do it by contract so as to shield himself from the contractor's misdeeds, the corporation could also. Individuals have been held exempt from the consequences of breaches of duty by their contractors, in work done in highways as well as elsewhere, from the abuse of which accidents and nuisances have occurred. And corporations have not usually been held to any different liability. See *Blake v. Ferris*, 1 *Seld.* 48; *Pack v. Mayor*, 4 *Seld.* 222; *Kelly v. Mayor*, 1 *Kern.* 432; *Clark v. Fry*, 8 *Ohio S. R.* 358; *Moore v. Sanborn*, 2 *Mich.* 528; *DeForest v. Wright*, 2 *Mich.* 368. There is nothing to prevent the Legislature from allowing any person whatever to do any act in derogation of what

would be otherwise a public easement, so long as such act does not injure some private right not dependent on that of the public, and then no one but the holder of such private right can complain. If the Legislature authorize a highway to be obstructed or diverted, no one can complain of the obstruction merely because, as one of the public, he has been accustomed to pass.

The right, therefore, of doing acts which may temporarily or permanently interfere with the public passage, is not necessarily confined to a city or local corporation, but may be exercised by any one to whom it is granted. And in authorizing drains and other usual private works to be carried on, I apprehend the city acts merely on behalf of the public, and not as the possessor of a franchise. These works are not city works in any sense of the term; and the city, in the cases cited, and numerous others cited on the argument, is not responsible. It does not follow, because a person prosecuted for digging up a highway must show his license, that his act is the act of the city, and that he is the agent of the city, any more than a broker is agent of the State Treasurer who gives *him* a license.

The distinction taken by my brethren, it seems to me, applies only where private property is interfered with, under some right arising under the principle of eminent domain. Thus, we held in the case of *Gardner v. Smith*, 7 *Mich.* 410, that where the law made a railroad corporation, and its agents, liable for losses from neglect to make the fences required by section 43 of the general railroad law, upon property adjoining the track, a contractor building the road had no right to enter upon land and open the track, except upon performance of those conditions, and was to be regarded as an agent of the company. But a franchise of this kind is neither negotiable nor assignable, and can only be exercised by the grantee from the State.

In the case before us, the contractor himself, and not

THE CITY OF DETROIT *v.* COREY.

the city, is the very person, and the only person, authorized by the charter itself to do this work. He is expressly recognized in the grant of power. The city does not appoint him as an agent to do what it could do by any other agent. It acts in pursuance of a strict legal duty, which is confined to making plans and letting them out to bidders. And I think this recognition of the right and duty of letting out the work in this way would take this case out of the rule laid down by my brethren, even if it were thus broadly applicable.

But it has not been held applicable to prevent municipal corporations, any more than individuals, from making contracts with the same immunity. The English, and most of the New York cases cited on the argument, establish this right. There are some cases holding a different doctrine. The cases of *Storrs v. Utica*, 17 *N. Y.* 104, and *Hickok v. Plattsburg*, 16 *N. Y.* 161, are undoubtedly authorities the other way. But neither of these cases assumes to assail the correctness of the former decisions directly. They endeavor to draw lines of distinction, which, to my mind, are entirely untenable. And the case of *Storrs v. Utica* goes partly, if not mainly, upon an assumption which my brethren have very properly disapproved, that the duty of maintaining a highway in repair was paramount to that of constructing a sewer.

I think the court below erred in holding the city liable for the neglect of the contractor, and that the judgment ought to be reversed.

*Judgment affirmed.*