## NEGLIGENCE IN THE MANAGEMENT OF PUBLIC PARKS.

Common Pleas Court of Clark County.

CORA L. KRAUSE V. CITY OF SPRINGFIELD.

Decided, January 30, 1914.

*Municipal Corporations—Liability of, for Negligence—In the Care of Public Parks—Injury to a Pedestrian on Defective Wooden Steps—Governmental and Proprietary Functions of Municipalities.*

Where one is injured without negligence on his part by falling upon defective and dangerous steps in a public street in a public park owned by and within a municipal corporation, which had actual or constructive notice of the condition of said steps prior to and at the time of the accident, the person so injured may maintain an action against the corporation for damages on account of the injuries, notwithstanding said park had been devised to said corporation and accepted by it, the conditions of such devise as stated in the will of the testator providing that such park and certain funds also devised for its maintenance should be under the exclusive control and supervision of trustees appointed by the sinking fund commission of the corporation, and as regards said funds with the assistance of an advisory committee appointed by the common pleas court of the county, and notwithstanding said park and funds had up to the time of said accident always been so managed, controlled and supervised.

HAGAN, J.

The cause of action stated in the amended petition in this case is for the alleged negligence on the part of the defendant, by its agents, on the 14th day of August, 1910, and prior thereto, in allowing a certain pair of steps at the end of Isabella street and within Snyder Park, all of which park is within the limits of the city of Springfield, to become out of repair, defective and dangerous to pedestrians, said walk being made of certain wooden steps with a dangerous hole therein, and that said plaintiff on said date, in the night season, without knowledge of the existence of said hole and without negligence on her part fell into same and sustained great bodily injuries, for which she asks judgment against the defendant in the sum of $10,000.

For its third defense to the amended petition the defendant alleges, in substance, that it is the owner and trustee for park purposes of said Snyder Park and also owner and trustee of certain funds to be used in connection therewith for repairing and improving said park; that it became such owner and trustee by virtue of certain devises and bequests; that it is now managing and administering said Snyder Park and said funds to be used in such connection therewith in accordance with the provisions and conditions of said devises and bequests; that the said devises and bequests require certain investments and changes of investments to be made upon the approval of a certain advisory committee appointed by a court or judge; that said park is and at the time of the accident alleged in the amended petition was and ever since has been controlled and administered by a certain board of park trustees, consisting of four resident electors of the city of Springfield, aforesaid, appointed by the trustees of the sinking fund of said city; that said board of park trustees entirely and exclusively controls and manages said park and controls, manages and supervises exclusively the maintenance and repair of all portions of said park, as well as all improvements of every kind in the same, and the council of the defendant, the city of Springfield, does not in any respect care for, supervise or control any portion of said Snyder Park, or any walks, street or portion of ground within the limits of said park; that the walk mentioned in the amended petition is situated entirely within the limits of said park and is no part of any public street, alley or highway, nor any part of any public ground of the city of Springfield under the care, supervision or control of the council of said city; that whatever injuries were inflicted upon the plaintiff, as complained of in said amended petition, the same occurred while said city was engaged in maintaining said park for the purpose of pleasure, convenience and health of the inhabitants of said city, and that in performing said functions, above stated, the said city had no proprietary or ministerial interest in the maintainance of said park, but was then and there exercising its usual and ordinary function of government.

To this defense the plaintiff filed a general demurrer, on the ground that it does not state a good defense to the cause of action set forth in said amended petition and said demurrer has been submitted to the court upon the briefs of the respective counsel for the parties.

It is claimed by the plaintiff that the defendant, the city of Springfield, is liable in damages for the alleged negligence on two grounds, viz: first, by reason of Section 3714, General Code, which provides:

"The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts and viaducts within the corporation, and shall cause them to be kept open, in repair and free from nuisance."

It is contended by counsel for plaintiff that parks are public grounds within the meaning of this section.

Assuming for the sake of discussion that parks are public grounds, yet the third defense, set forth in the amended answer alleging, as it does, that the city of Springfield holds said park in trust for said city and in the same capacity holds the funds constituting an endowment to be used in connection therewith, such trusteeship arising under the provisions and conditions of certain devises and bequests requiring all investments and changes of investments to be made upon the approval of a certain advisory committee, appointed by a court or judge; that said park has ever been controlled and administered by the board of park trustees, appointed by the trustees of the sinking fund of the said city, which board of park trustees has the exclusive control and management of said park and the maintenance and repair thereof, as well as all improvements of every kind within the said park; that the council of the city of Springfield does not in any respect care for, supervise or control any portion of said Snyder Park, or any walk, street or portion of ground within its limits, the place of the alleged accident being entirely within the limits of the said park, the court on an examination of the statutes of Ohio, Sections 4066-4082, inclusive of both numbers, finds that said sections provide a scheme for the management and

supervision of a municipal park and of funds to be used in connection therewith, where the municipal corporation in which the park is situated is the owner or trustee of the property and said park and funds came to the corporation by deed of. gift, devise or bequest; Section 4066 declaring that such property or funds shall be managed and administered in accordance with the provisions or conditions of such deed of gift, devise or bequest. It is further provided that when such deed of gift, devise or bequest requires an investment or change of investment of the principal of such property or funds, or any part thereof, to be made upon the approval of an advisory committee appointed by a court or judge, then such property or funds shall be managed, controlled and administered by a board of park trustees, composed of four resident electors of the municipal corporation and to be appointed by the trustees of the sinking fund.

It is provided by Section 4072, General Code, as follows:

"Such trustees shall have the entire management and control of such property or funds, all improvements of every nature within such park or parks, moneys derived from levies made for park purposes, moneys from the general fund appropriated by the council for such purposes, proceeds of bonds issued or sold for park purposes and of moneys for other property donated to any such municipality for park purposes, all of which money shall be placed in a special fund called a 'park fund,' which shall be disbursed by the treasurer of any such city or village only upon the warrant of the auditor or clerk drawn in accordance with the order of the board of park trustees."

The allegations of the third defense of the amended answer, while not as explicit as they might perhaps have been made, are yet sufficient to bring said Snyder Park within the operation of the sections of the General Code just cited by the court.

It is thus apparent that in the case of Snyder Park, as in similar cases of parks in municipal corporations, the council of this corporation does not have the care, supervision and control of the grounds contained in said park, and not having such supervision and control it is certainly not by virtue of this statute required to keep such grounds in repair and free from nuisance. In other words, the responsibility of the council under Section 3714, Gen-

eral Code, is commensurate with the power bestowed upon it
by said section, and the control, supervision and management of
parks of the status of Snyder Park, already referred to, are
plainly taken out from under the operation of.the statutory rule
prescribed by Section 3714, the failure to observe which is the
basis upon which negligence is predicated against the city by
one who sustained injury by reason thereof.

If the ground of liability of the city in this case must be
found in the violation of Section 3714, the third defense of the
amended answer would be demurrable.

Is the defendant, the city of Springfield, liable at common law
upon the cause of action already alleged in the petition?

If such liability exists, then the demurrer should be over-
ruled.

It is agreed on all hands that a municipal corporation is not
liable for damages for the misfeasance or non-feasance of its
agents or employees in the exercise of its governmental functions.

It seems also to be well settled at common law that a municipal
corporation must respond in damages to one injured by reason
of the negligence of its agents or employees in relation to its pro-
prietary interest.

The Supreme Court of Ohio has repeatedly decided that it is
quite difficult sometimes to classify any particular case so as to
satisfactorily place it in one class or the other; that is to de-
termine whether it belongs to the governmental class or to the
proprietary class.

It is well settled law in Ohio by the decisions of the Supreme
Court, that where a municipality is acting virtually as
a branch of the state government, as, for instance, in
protecting persons and property through its police and fire de-
partments, the municipal corporation is not liable for the negli-
gent acts of its agents and employees in carrying on such depart-
ments, as it is discharging but one of the prime functions of
the state, which is the protection of human life and property.

If the state had undertaken directly to discharge such functions
it would be immune from damages for misfeasance or non-
feasance and when it transfers such function to a municipal cor-
poration the immunity of the state goes with such transfer to

such municipality as the agent, but as said by Judge Ranney in *Dayton* v. *Pease,* 4 Ohio State, page 80.

"But when a municipal corporation undertakes to execute those prescribed regulations by constructing improvements for the especial interest or advantage of its own inhabitants, the authorities are all agreed that it is to be treated merely as a legal individual and as such owing all the duties to private persons and subject to all the liabilities that pertain to private corporations or individual citizens. To this class most clearly belongs the construction and repair and maintenance of its streets."

The case of *Dayton* v. *Pease* was that of negligence of employees of the city in constructing a bridge.

The maintenance of the public health may also be regarded as a function of the state, and where it makes a municipal corporation its agent in the exercise of such function, damages can not be recovered for the negligence of a board of health or the health officers undertaking the discharge of such function. *Turner* v. *Toledo,* 15 C. C., 627.

In the case of *Bell* v. *Cincinnati,* 80 O. S., 1, the Supreme Court held that where a municipal corporation is authorized to establish, maintain and regulate a workhouse therein the directors of public service are invested with the management and control of said workhouse in behalf of the corporation and in so managing and controlling same the municipal corporation acts in a governmental capacity, not in a proprietary one. The court holds that the establishment and conduct of the workhouse is merely incidental to the proper exercise of the functions of the police department and for that reason is governmental.

An analogous case is where a public function is by the terms of the statute made mandatory upon a public agency, as, for instance, a board of education. It was held in the case of *Finch* v. *Board of Education of the City of Toledo,* 30 O. S., 37:

"A board of education is not liable in its corporate capacity for damages for an injury resulting to a pupil while attending a common school from its negligence in the discharge of its official duty in the erection and maintenance of a common school building under its charge, in the absence of a statute creating liability."

The court said on page 46:

"That the school district or the road district is invested with a corporate character the better to perform its special function. It is but an instrumentality of the state."

And on page 48:

"The defendant here is but a *quasi* corporation of inferior grade, acting for the public as one of the state's ministerial educational agents, with power to levy taxes for school and school building purposes and no other."

In other words, in this case the court held that the work of education carried on by the board of education of Toledo was purely governmental in its character and therefore no liability attached for the alleged negligence. On the other hand, it will be noted that in *Dayton* v. *Pease,* as already said, the improvements of streets and highways do not constitute a government function in the sense in which we are now trying to define the same and this decision was rendered before Section 3714 or its original or anything of that nature was enacted by the Legislature of Ohio, so that the principle thus announced in *Dayton* v. *Pease* is an enunciation of the common law doctrine.

The case of *Cincinnati* v. *Cameron*, 33 O. S., 336, is an instructive one in this connection. This was a case where suit was brought to recover on account of work done for a municipal corporation in the construction of a hospital, where, because the fund provided for the payment of the obligation of the city was exhausted, it was claimed that no liability arose for the deficit, because the act of the city in constructing the hospital was governmental. The Supreme Court said:

"There is a distinction between those powers of a municipal corporation which are governmental and political in their nature and those which are to be exercised for the management and improvement of the property. As to the first the municipality represents the state and its responsibility is governed by the same rules which apply to like delegation of power. As to the second, the rules which govern the responsibility of individuals are applicable."

At page 366 the court cites with approval *Dayton* v. *Pease* and also *Detrick* v. *Cory*, 9 Mich., 165, which last case gives an illustration as follows:

"The power given a city to construct sewers is not a power for governmental purposes, nor is it a public municipal duty imposed upon the city, like that of keeping streets in repair, but it is a special legislative grant by the state for private purposes. The sewers in the city, like its works for supplying the city with water, are the private property of the city, the corporation and its corporators; that is, its citizens are alone interested in it; the outside public as to the people of the state at large, have no interest in them."

It cites the cases of *College* v. *Cleveland*, 12 O. S., 375, which held that municipal corporations are not liable for the action of a mob within its limits, and *Wheeler* v. *Cincinnati*, 19 O. S., 19, where it was held that the city was not liable for the failure to provide proper fire apparatus and to keep in repair public cisterns.

These cases are cited as illustrating the governmental functions of municipal corporations.

The court said, in the case of *Cincinnati* v. *Cameron*, at pages 368-9, when this hospital was built or contracted for, the city was exercising no governmental function. It was not appearing in its political character or manifesting any of the attributes of sovereignty. It was the owner of land upon which it was desirous of building a house. It was managing its own property.

*Toledo* v. *Cone*, 41 O. S., 149, is an instructive case in this connection. It was one brought to recover for the alleged negligence of an employee of the city in the construction of a vault in a cemetery owned by the city, whereby the plaintiff was injured. In this case the city had full control over the cemetery and governed it by means of a board of trustees chosen by the electors of the corporation. The court said in the syllabus that the city was not liable for the injuries resulting to the employee. The court clearly recognizes in this case that the Legislature, under the Constitution, may provide for the organization of cities, making them depositaries of certain limited governmental powers, to be exercised on behalf of the state for the public wel-

fare and that they are agencies or instrumentalities to which the state delegates a portion of its governmental power. For instance, the court said an obligation rested upon the state to aid, by proper legislation, in the protection of the property of its citizens. This function, delegated to a municipal corporation, is governmental. At page 161, the court said:

"Municipal corporations, however, are to be regarded in another and very different aspect. While they act in a public character or capacity and exercise public powers they may and do act also in a private capacity, like private corporations, and as such are held to a like responsibility. Thus, if a municipal corporation acquires real or personal property, and in the discharge of what may be deemed ministerial duties in respect to the same an individual receiving an injury through the negligence of its officers or servants, it should be held responsible to that individual though not liable for a defect in judgment or discretion while acting as a state instrumentality in the exercise of legislative functions, yet having like a private corporation, or natural person, become the owner or obtained the control of the property, it should not be relieved from the operation of the general maxim, that one should so use his own as not to injure that which belongs to another. Thus, if a city neglects its ministerial duty to cause sewers to be kept free from obstructions, to the injury of a person who has an interest in the performance of that duty, it is liable to an action for damages thereby occasioned."

In the case at bar the court is unable to see that the city of Springfield was acting as an agent of the state and exercising governmental functions in the acquisition and management of Snyder Park up to the time that the alleged accident occurred. It was not mandatory on the city to accept the said park. It voluntarily acquired it and has maintained it as territory of which the city has the title as trustee and of which the public generally are beneficiaries. This is a proprietary interest and the functions it thus discharges in reference to the park are wholly different from those which it discharges with reference to its fire or police departments.

There are no decisions of the Supreme Court in Ohio on the question of liability of municipal corporations for the negligence of employees in the management and care of its public parks.

There are two cases, tried in common pleas courts, however, in which the subject is discussed and decisions rendered, holding the city liable for negligence on common law grounds. The first is that of *Bloom* v. *Newark*, decided by Judge Seward in 1905, and reported in 3 N.P.(N.S.), page 480, the syllabus of which is as follows:

"A municipality is liable in damages for an assault committed by the custodian or caretaker of a public park, where the assault is committed by such employee while acting in the line of duty."

Judge Seward makes a clear distinction between governmental functions of a corporation and those which are exercised for the improvement of the territory within its corporate limits, holding in the latter case the same measure of responsibility as in the case of private individuals or corporations.

The second case referred to is that of *Harff* v. *Cincinnati*, decided by Judge Gorman, and reported in 11 N.P.(N.S.), 41. In this case Judge Gorman held the city liable either on its statutory liability for the care of public parks or upon its common law liability; in fact, holding it liable on each ground. The park in question, however, in that case was the property in fee of the city of Cincinnati and not held by it as a trustee and was under the direct control of its municipal authorities, under the general provisions of the park laws of Ohio, other than the sections relating to parks and park property, held on devises and bequests, already referred to. Therefore Judge Gorman, concluding that parks should be considered public grounds, held that the city was liable under Section 3714. He did not content himself, however, with this proposition, but said in the second proposition of the syllabus:

"A municipality in acquiring and maintaining public parks acts in a private rather than a governmental capacity and is liable for negligence in keeping pathways in such condition that injury results to one rightfully in the park and exercising due care."

This case is directly in point, as the action was to recover damages for personal injuries suffered by the plaintiff from falling

into a large hole in or along a footpath in Eden Park, one of the public parks in the city of Cincinnati.

It is fair to say that outside of the state of Ohio there is some conflict of opinion as to the liability at common law of municipal corporations in case of the negligence of its employees in the management of parks. It is said, however, in 28 Cyc. at page 1311:

"Although there are some cases to the contrary, the management and care of public squares, parks and commons is ordinarily not a corporate duty and therefore the city is liable for injuries resulting from its negligence in caring for them." Citing: *Jones* v. *New Haven*, 34 Conn., 1; *Carey* v. *Kansas City*, 187 Mo., 715; *Bartholdt* v. *Philadelphia*, 154 Pa. St., 109; *Lowe* v. *Salt Lake City*, 13 Utah, 91; *Ewen* v. *Philadelphia*, 194 Pa. St., 548, and other authorities, but citing to the contrary some authorities, particularly those in Massachusetts and *Blair* v. *Granger*, 24 R. I., 117.

The courts in Ohio may eventually classify the functions of government of a municipal corporation in reference to parks as governmental and not proprietary, but the court is unable to see, by the authorities in Ohio, how such a conclusion is to be reached.

The court therefore holds that the demurrer is well made and sustains the same.