GRANT, J.
The plaintiff— both here and below — brought suit for the death.of h's intestate, caused, as he said, by the wrongfully negligent act and omission of the defendant, the city of Cleveland.
Upon the ease being brought to trial before a jury, it was made to appear that the deceased came to his death from a collision between himself while lawfully on a public street or' way and a wagon engaged at the time in collecting garbage and being operated by, and under control of the servants of the defendant city.
The case was arrested from the jury at the end of the plaintiff’s evidence and a judgment rendered for the defendant, by the court, on the single ground, it is said, that the city’s servants in doing or omitting to do what they did or should have done, whereby the intestate came to his death, were exercising a part of the sovereignty of the state and performing a governmental function, for the untoward result of which the defendant could not in law be held to an account, nor its delinquencies in that re *446 spect be challenged or called in question in the courts. And this is the only question presented by the record and argued in the case.
We do not propose to discuss the decisions brought to our attention from courts outside of Ohio, as we do not regard them in point when the facts of each are examined, or applicable in point of law when brought to the test of some obvious principles which we do consider as settled in this state and which we are inclined to allow in determining our conclusion in this case. Nothing could concretely be more at variance with one’s natural notions as to the office and dignity of sovereignty, than the gathering of garbage as it is commonly done on the streets. Nothing could well be further from our innate ideas of the power and dignity of the state that the collectors of garbage, whom we are asked to recognize and protect as legally inerrant as the representatives of the supreme commonwealth and of the one who can in the law’s eye do no wrong. But that is, perhaps, a matter of sentiment; sovereignty in legal contemplation is not to be identified by the smell of the thing, but by what the smell stands for and legally means.
In this case the immediate sovereign, the image and superscription of the state, is the defendant, a municipal corporation, to which, as the judgment we are considering says, has been par-celled the supreme power, to be deemed sacrosanct in this case.
Speaking of that entity, a municipal corporation, in the respect we are now considering, our Supreme Court, in Cincinnati v. Cameron, 33 Ohio St. 336, 367, say:
“In its governmental or public character, it represents the state, while in the oilier it is a mere private corporation. As a political institution, the municipality occupies a different position, and is subject to different liabilities from those which are imposed upon the private corporation. But because the two characters are united in the same legal entity, it does not follow that the shield which cove a the political equally protects the private corporation.
“The power given a city to construct sewers, is not a power given for governmental purposes; nor is it a public municipal duty imposed upon the city, like that of keeping streets in re *447 pair, but it is a special legislative grant to the city for private purposes. The sewers of the city, like its works for supplying the city with water, are the private property of the city; the corporation and its corporators — its citizens — are alone interested in them; the outside public, as people of the state at large, have no interest in them, as they have in the streets of the city, which are public highways. Detroit v. Corey, 9 Mich. 165 [80 Am. Dec. 78].”
The test thus furnished is easily applied to the ease at bar. The people of the state at large have no interest in the disposal .of garbage in Cleveland. That is for the convenience and health of a part only of the inhabitants even of the city — its householders. No distinction in principle is perceived between sewer service and garbage collection; if there is any, we think the former comes nearer to being a governmental function than the latter, as it answers a wider purpose and is for the advantage of a larger portion of the public. And the distinction becomes more marked, we think, upon the consideration that the municipality derives, or may derive, a revenue from its garbage, in which manifestly the people of Ohio outside of Cleveland can not share.
After some further discussion of what constitutes the dividing line between governmental agencies and municipal enterprises, the case last cited goes on to say:
“With regard to the liability of a municipal corporation for the acts of its officers, the distinction is, between an exercise of those legislative powers which it holds for public purposes, and, as a part of the government of the country, and those private franchises which belong to it as a creature of the law; within the sphere of the former, it enjoys the exemption of government, from responsibility of its own acts, and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power. But in regard to the latter, it is responsible for the acts of those who are in law its agents, though they may not be appointed by itself. Commissioners v. Duckett, 20 Md. 468, 476 [88 Am. Dec. 557].”
Here again we have a standard easily brought to bear upon the present case; the power exercised which carries with it im *448 munity from liability must be one held “for public purposes, and, as a part of the government of the country.” To spread the immunity over all the subordinates of a government and thus to clothe all alike with an exemption which amounts to an attribute of sovereignty, seems to confound all just notions of ■what sovereignty means and to put a tidewaiter on a par with its president, assimilating- the office of the one to that of the other and surrounding each with equal dignity and importance.
If the line between an agency of government, carrying with it exemption from liability for the torts of the agent, and persons whom the law does make responsible for their wrongdoings, can not be drawn higher than a collector of garbage, it is hard to see that.it can be drawn anywhere. AIL city employees will alike be clothed with legal immunity and will be safeguarded in their acts, whatever they may do or omit. This result would push the doctrine to a perilous consequence, as seems to us, but if the court below was right in taking this case from the jury, we see no escape from the view that such a conclusion must be accepted as law.
We think the case already discussed — Cincinnati v. Camarón, supra — points out the rational and true line of cleavage to be observed, namely, that “the public of Ohio,” as people of the state at large, have no interest in the work in which the city of Cleveland was engaged when the plaintiff’s intestate came to his death in consequence of the city’s negligence while so engaged, and that, as a consequence, the city can not escape any just liability thus caused and occasioned.
We reach this conclusion notwithstanding the arguments of counsel to the contrary and the cases marshalled to support them, believing that none of the latter are of authoi’ity compelling a different consequence. Most, if not all, of the cases can, we think, be differentiated from the case in hand, but we shall not take the time to do so; we have, however, examined them with suitable attention.
For error of law in arresting the case from the jury and rendering judgment, thereupon, for the defendant, the court below was in error, as we find. For that error the judgment is reversed and the cause is remanded to that court for further proceedings not at variance with law.