## CITY OF CHICAGO
### *v.*
### CHARLES LANGLASS *et ux.*

VINDICTIVE DAMAGES—*negligence of municipal corporations.*   In actions against a city to recover damages for injuries occasioned by neglect of the officers or employees to keep the streets or sidewalks in proper repair, compensatory damages only should be given.   Vindictive or punitive damages can not be recovered against a municipal corporation. *

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Chief Justice, presiding.

The opinion states the case.

Mr. S. A. IRVIN and Mr. H. DAVIS, for the appellant.

Messrs. WALKER and DEXTER, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

*See also, *City of Chicago* v. *Martin et ux.* 49 Ill. 241.

This action was brought by appellees to recover for injuries sustained by Mary Langlass, in falling from the sidewalk at the northeast corner of Union and Lake streets, in the city of Chicago. On the trial in the court below, the jury found the issues for appellees, and assessed their damages at the sum of $4750. A motion for a new trial was overruled, and the court rendered judgment on the verdict, and the city has appealed the case to this court, and assigns various errors.

It appears from the evidence that Mary Langlass, one of the appellees, with her daughter, on the evening of the 24th of December, 1867, between eight and nine o'clock, while passing along Union street at its intersection with Lake street, slipped or fell from the sidewalk to the ground below, a distance of some six feet, and received serious injuries. The daughter says, that as they turned the corner, her mother suddenly fell, and she heard her scream, but it was so dark she could not see her. The evidence shows that at this intersection, Lake street is six feet above the level of Union, owing to the difference in grade; that the sidewalk on the east side of Union street, extending north from Lake street, was but some four feet in width, and descended quite abruptly from Lake street, until it reached the level of Union street, some twenty-five or thirty feet north of its intersection with Lake street, the descent being six feet in that distance.

It also appears that there was an open space between this sidewalk and a building on the north-east corner of Lake and Union streets, some four feet in width; that this sidewalk was not protected by railing or guards, to prevent persons from stepping to the ground below, a distance of six feet; that there was some ice on the sidewalk on Union street at the time, and there were cleats nailed across this inclined plane or sidewalk, which extended to within about a foot of the east edge thereof; that the weather was cold, the night dark and the ground frozen.

It appears that Mrs. Langlass, as she was in the act of turning north to go on Union street, fell as before stated, and struck

17—52nd Ill.

258      CITY OF CHICAGO v. LANGLASS et ux.    [Sept. T.,

Opinion of the Court.

upon her head.   It appears that there was a lighted lamp at the corner of Lake and Union streets, but the daughter testifies that it was so dark that she was unable from above to see her mother on the ground below.   We are not able to say from the evidence that Mrs. Langlass was guilty of negligence, or that the city had observed due care in rendering this public thoroughfare safe for the passage of pedestrians in the night time.   But the question presents itself, whether the damages found by the jury were excessive.

That the injuries received by Mrs. Langlass were serious, there seems to be no doubt, and that she has been, and was at the trial below, somewhat disabled, seems to be established by the evidence.   But to justify a verdict of the amount found in this case, the injuries should be of no ordinary character.   It appears that she walked home, with the assistance of the witness Cassler.   Dr. Marsh seemed to think that the principal injury was a wound on the skull, but not a fracture at the first examination, but some two months later discovered curvature of the spine; erysipelas set in, and seemed to render the symptoms alarming for some days.   He also states that he believed her back was seriously injured; that she had a slight curvature of the spine. '

Dr. Allen, another of appellees' witnesses, who was called in consultation with Dr. Marsh, testifies that the erysipelas caused the unusual swelling of the head, but there was no contusion on the back.   Appellant called two surgeons of admitted ability, who state that it is uncertain whether the curvature was produced by the fall.   Dr. Powell gives it as his opinion that had such been the case, it would have been impossible for Mrs. Langlass to have walked the distance of six blocks; that a slight curvature as this was described by Dr. Marsh would not in the slightest interfere with a person in performing ordinary labor, or indicate an incapacity to perform manual labor. And on his cross examination he says that half of the working people have slight curvature of the spine.   And he concludes that it is not probable there was any injury to the spine from the fall.

Again, Dr. Bogue says, that slight curvatures of the spine do not interfere with the power to perform manual labor. He also thinks the fact that Mrs. Langlass walked several blocks immediately after the fall, is evidence that the spine was not injured by the fall. He infers, from the fact that the curvature was not discovered by the attending physician for nearly two months after the accident, that it existed previous to that time.

The attending physicians do not assert with any degree of certainty that the curvature was the consequence of the fall, but seem to entertain that opinion. We, after a careful examination of the evidence, are not prepared to say that Mrs. Langlass is permanently disabled, or if so, to any considerable extent. She must have suffered much pain from the erysipelas, and, perhaps, from some nervous derangement consequent upon the fall, and if occasioned by the negligence of the officers of the city in grading or improving the streets, then she should be permitted to recover reasonable compensation, sufficient to cover all expenses attending her sickness, and for loss of time and for pain from the injury, and any permanent injury.

But in fixing the compensation the jury have no right to give vindictive or punitive damages, against a municipal corporation. Against such a body they should only be compensatory, and not by way of punishment. This seems to us to be a very large verdict, in fact largely beyond a compensation for the loss and suffering and permanent injury. We must conclude that the jury have given exemplary damages, and that the case should be submitted to another jury. The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*