# WHEELING.

## WILSON v. CITY OF WHEELING.

Submitted June 3, 1880.   Decided March 25, 1882.

1. A motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case ; and although an Appellate Court will supervise the action of the court below on such motion, it will not reverse a judgment on that ground, unless such action is plainly erroneous.   (p. 328.)

2. To entitle a party to a continuance on the ground of the absence of a witness, it must be shown, that the party has used due diligence to procure the attendance of the witness; that he is a material witness; that the same fact cannot be proved by any other witness in attendance; and that the party making the application cannot safely go to trial in the absence of such witness.   (p. 328.)

3. It is a principle of nearly universal acceptation in this country, that when a city or town is incorporated and is given control over the streets and walks within its corporate limits, and is empowered to provide the means to make and repair them, the corporation not only assumes this duty but by implication agrees to perform it for the benefit and protection of all, who may have occasion to make use of these public easements; and that for failure in the discharge of this duty the corporation is responsible to the party injured.   (p. 331.)

4. A municipal corporation is not an insurer against accidents upon the streets and sidewalks.   Nor is every defect therein, though it may cause the injury sued for, actionable.   It is sufficient if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes by night as well as by day, and whether they are so or not is a practical question to be determined in each case by its particular circumstances.   The ground of the action is either positive misfeasance on the part of the corporation, its officers, or servants, or by others under its authority in doing acts, which cause the streets to be out of repair, in which case no other notice to the corporation is essential to its liability; or the ground of the action is the *neglect of the corporation* to put the streets in repair, or to remove obstructions therefrom, or to remedy causes of danger occasioned by the wrongful acts of others.   (p. 332.)

5. Where a dangerous excavation is made and negligently left open (without proper lights, guards or covering) in a traveled street or sidewalk by a *contractor* under the corporation for building a sewer or other improvement, the corporation is liable to a person injured thereby, although it may have no immediate control over the workmen   (p. 334.)

6. Where the work contracted for necessarily constitutes an obstruction or defect in the street of such a nature, as to render it unsafe or dangerous for the purposes of public travel, unless it is properly guarded or protected, the employer equally with the contractor engaged to perform is liable therefor to the injured party.   But the employer is not liable, where the obstruction or defect in the street causing the injury is wholly collateral to the contract-work, and entirely the result of the negligence or wrongful acts of the contractor or his servants.   (p. 336.)

7. Whether a street of the city was opened by it on paper, or by condemnation or by dedication, it should not be held, that it is the duty of the city forthwith to regulate and grade it, or that the city, when it commences to improve such street by grading, &c., has not the right to temporarily obstruct it so far as necessary for the purpose of grading and putting it in convenient and safe condition for the use of the public without liability for such necessary interruption of travel and inconvenience to the public.   (p. 347.)

8. But while for the purpose of grading such street the city might temporarily obstruct the passage of travel over the same, it is not authorized to leave such street, while undergoing such improvement in such a condition, as unnecessarily to expose those, who may pass upon it, to inconvenience or danger. At such a time such street should not be left without protection or guard or beacon, especially at night, to warn passers against such uncommon danger. (p 347.)

9. If such reasonable precautionary measures are not adopted for the safety of the citizens and travelers, the city is culpable and liable for injuries, as it is, when it permits one of its graded streets to become unsafe for want of repairs. (p. 347.)

10. The same principles necessarily apply, where the city temporarily obstructs the passage of travel, &c., over one of its graded streets in making necessary or proper repairs thereof. (p. 348.)

11. The same principles apply, where such temporary obstruction is made by contractors, who contracted with the city to do the work, or where such contractors are directed by an officer or officers of the city, authorized by the city to give such direction to do the work, which causes the obstruction, and the work is accordingly done, and the work contracted to be done or so directed to be done necessarily renders the street unsafe and dangerous for passage. (p. 348.)

12. If the authorities of a city have treated a place as a public street taking charge of it and regulating it, as they do other streets, and an individual is injured in consequence of the negligent and careless manner, in which this is done, the corporation cannot, when it is sued for such injury, throw the party upon an enquiry into the regularity of the proceedings, by which the land became a street, or into the authority, by which the street was originally established. (p. 349.)

13. In actions against the city to recover damages for injuries occasioned by its streets being out of repair and the like, compensatory damages only should be given. Vindictive or punitive damages cannot be recovered against the city in such cases. (p. 350.)

14. In such cases there is a rule for the measurement of damages, and the rule is substantially, that the damages must be measured by the loss of time during the cure and expenses incurred in respect to it, the pain and suffering undergone by the plaintiff, and any permanent injury, especially when it causes a disability for further exertion in whole or in part and consequent pecuniary loss. (p. 350.)

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Ohio, rendered on the 29th day of August, 1878, in an action of trespass on the case in said court then pending, wherein Margaret Wilson was plaintiff, and The City of Wheeling was defendant, allowed upon the petition of said city.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

HAYMOND, JUDGE, furnishes the following statement of the case:

This is an action of trespass on the case brought by the plaintiff against the defendant to recover damages for an injury alleged to have been received and sustained by her by her falling into an opening in a certain road and common public highway called Charles street in the city of Wheeling, made for the purpose of constructing a sewer or culvert crossing said street. The plaintiff's damages are laid in the declaration at $5,000.00. The action was originally brought in the county court of the county of Ohio in December, 1874. In April, 1875, the defendant appeared in court to the action and demurred to the plaintiff's declaration, and the plaintiff joined in the demurrer. The county court overruled the demurrer to the declaration, and thereupon the defendant pleaded not guilty, and issue upon the plea was duly joined. It was agreed between the parties, that the defendant might give in evidence at the trial of the cause any matter, which it might have pleaded specially. At the same term a trial of the case was had in the county court before a jury upon the issue joined; and the jury rendered their verdict, by which they assessed the plaintiff's damages at $1,350.00. It appears, that after the verdict was rendered, the defendant moved the court to set aside the verdict and grant a new trial, because the same was contrary to law and the evidence, and because the damages were excessive. It also appears, that the defendant excepted to various opinions of the court during the trial including instructions of the court, and a number of bills of exceptions were duly signed and sealed by the court and made a part of the record at the instance of the defendant. On the 21st day of October, 1875, the county court overruled the defendant's motion for a new trial and rendered judgment for the plaintiff upon the verdict of the jury and for the amount thereof and the plaintiff's costs, to which the plaintiff excepted, &c. It appears, that afterwards such proceedings were had upon a *supersedeas*, that on the 2d day of June, 1877, the circuit court of said county of Ohio set

aside the said judgment of the county court and granted a
new trial in the case and retained the case in the circuit court
for trial.   It further appears, that afterwards on the 20th day
of May, 1878, the parties appeared in the circuit court by
their attorneys, and the defendant moved the court for a con-
tinuance of the cause " on account of the absence of material
witnesses ;" but the court overruled the motion and the de-
fendant excepted by bill of exceptions in due form to the ac-
tion of the court in this respect ; and thereupon the issue was
tried by a jury in the circuit court, and the jury by their ver-
dict found for the plaintiff and assessed her damages at
$3,666.66⅔.   Whereupon the defendant moved the court to
set aside the verdict and grant it a new trial.   Afterwards on
the 29th day of August, 1878, the said circuit court over-
ruled the defendant's motion for a new trial and rendered
judgment in favor of the plaintiff against the defendant for
the amount of the last named verdict of the jury with inter-
est thereon from the 22d day of May, 1878, until paid and
the plaintiff's costs.

It further appears, that during the trial of the cause the de-
fendant excepted to certain rulings of the court and filed its
bills of exceptions, which were signed and sealed by the court
and made a part of the record.   These bills of exceptions ap-
pear to be eight in number and are referred to in the opinion
of the court, as far as deemed necessary to a proper under-
standing of the case.   The bills of exceptions taken by de-
fendant to the opinions and rulings of the county court dur-
ing the trial of the cause in that court do not appear in the
record ; but it is not pretended or claimed by the counsel on
either side, that there was error in the circuit court in setting
aside the final judgment of the county court and granting a
new trial.   The case is now before this Court upon writ of er-
ror and *supersedeas* to the final judgment of the circuit court
rendered upon the verdict of the jury on the 29th day of
August, 1878, above mentioned.

*George W. Jeffers,* for plaintiff in error cited the following
authorities:  Sherm. & Red. on Neg. § 346; *Id.* 349 ; *Id.*
377; *Id.* 147 ; 46 Tex. 525 ; 63 Mo. 417; Dill. Mun. Corp.
§ 505 and note ; 40 Me. 154 ; 6 Mich. 176; 12 Mich. 401 ;

21 Mich. 319; .42 Me. 10; 27 Vt. 454; 36 Vt. 580; 8 Gratt. 532; 5 Gratt. 241; 5 Sanf. 302; 1 Bos. & Pul. 404; 4 Seldon 222; 1 Seldon 48; 39 Barb. 329; 17 Mo. 121; 46 Pa. St. 213; 8 Ohio St. 378; 5 Excheq. Rep. 720; 49 Ill. 241; 71 Ill. 238; Sedg. Meas. Dam. 453–473; *Id.* 608; Dill. Mun. Corp. 319; 6 W. Va. 312.

*B. B. Dovener* for defendant in error cited the following authorities; 2 W. Va. 187–191; 2 Dill. Mun. Corp. § 791; 17 N. Y. 104; 6 W. Va. 312; 13 W. Va. 158; 4 W. Va. 203; 23 Ill. 385–387; 9 W. Va. 695; 10 W. Va. 145; 4 W. Va. 203; 6 W. Va. 258; 2 W. Va. 596; 6 Gratt. 712; 6 W. Va. 110; 19 Gratt. 354; 5 W. Va. 115–117.

HAYMOND, JUDGE, announced the opinion of the Court:

It is not claimed by the counsel of the plaintiff in error, that the declaration in the cause is defective. I have failed to find any substantial defect in the declaration and therefore do not see, that there was any error in overruling the demurrer. Though I am free to say, that I have not examined the declaration with that care I should, if it were claimed here by the distinguished counsel for the plaintiff in error, that the declaration was insufficient. I will first consider, whether the circuit court erred in overruling the defendant's motion to continue the cause on the 20th day of May, 1868. This question is fully presented by the defendant's bill of exceptions No. 1, which contains the affidavits filed by each party in support of and against the motion. The motion for a continuance is on account of the absence from the State of two material witnesses. A motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case; and although an Appellate Court will supervise the action of the court on such a motion, it will not reverse a judgment on that ground, unless such action is plainly erroneous. *Davis & Moore* v. *Walker*, 7 W. Va. 447. To entitle a party to a continuance on the ground of the absence of a witness, it must be shown, that the party has used due diligence to procure the attendance of the witness; that he is a material witness; that the same fact cannot be proved by any other witness in attendance; and that the party making the

application cannot safely go to trial in the absence of such witness. *Tompkins* v. *Burgess*, 2 W. Va. 187.

The affidavit filed in support of the motion fails to show, that the defendant had used due diligence to procure the attendance of said absent witnesses or either of them, or to procure their depositions or the deposition of either of them. The affidavit states, that the absent witnesses are material witnesses for the defendant in the case, and that in the opinion of the affiant (who, I infer, was the defendant's counsel in the circuit court) the defendant could not safely go into the trial of the case without the testimony of at least one of the absent witnesses; that the defendant had expected to go to trial on that day and had consented to the setting of the cause for that day in good faith; that the affiant did not know, that said witnesses were absent from the city until informed by the sheriff on the Friday before; that upon enquiry affiant found, that James Graham, one of the absent witnesses, was in Ireland, and that William Haskins, the other absent witness, was employed on the Tuscarawas railroad, in the State of Ohio; and that the affiant believed, that the said witnesses were in the city until informed by the sheriff of Ohio county; that affiant believes, that he can either have the attendance of said Haskins at the next term or procure his deposition. This is the substance of all said affidavit shows. Further it is not shown by the said affidavit or otherwise, that the same fact or facts could not be proved by any other witness in attendance.

The affidavit of the counsel for the plaintiff filed in the cause against said motion tends strongly to show, that there was in attendance a witness, by whom the same facts could be proved as by said absent witness; and the affiant states very strong reasons, why he knows such to be the fact. I do not feel authorized under the facts, as they appear, and the law to determine, that the circuit court erred in overruling the defendant's motion for a continuance.

By bill of exception No. 2 it appears, that before the cause was submitted to the jury, the defendant asked the court to instruct the jury as follows: "That previous knowledge of a defect in or of the dangerous condition of a street, road or highway by reason of such defect or dangerous condition is evidence tending to show, that such person was not using or-

dinary care," which instruction the court gave but added thereto the words: "And is to be considered with the other evidence in the case in determining, whether the plaintiff was in the exercise of ordinary care at the time of the accident." To the addition to the instruction asked by the defendant as given by the court the defendant excepted in due form. I do not think the evidence, as certified by the court below, tends to show, that the plaintiff had previous knowledge of the defect in or dangerous condition of the street, road or highway in the declaration mentioned, which caused the injury to the plaintiff, of which she complains in her declaration. But the evidence tends to show, that the plaintiff had no previous knowledge of the opening or pit in and across the street, into which she fell, and by which she claims she was injured, and that it was dark and foggy, and that she did not and could not see it, as she approached it. I do not see however, that the addition made by the court to the instruction asked by the plaintiff and given by the court to the jury was erroneous, or that the plaintiff under any view could have been prejudiced thereby.

As the questions raised by the defendant's 3d, 5th and 6th bills of exceptions are similar in principle, I propose to consider the matters arising upon these bills of exceptions together. By the defendant's 3d bill of exceptions it appears, that the defendant asked the court to instruct the jury as follows: "That a municipal corporation is not liable in damages for injuries received by third persons occasioned by the carelessness or negligence of workmen engaged in grading a street under the direction of a person or persons, who have entered into a contract with the corporation in conformity with a plan referred to in the contract, for a specific sum to be paid by the corporation. A recovery for such an injury can only be had against the person or persons guilty of the negligence or carelessness causing the injury." By the defendant's 5th bill of exceptions it appears, that the defendant prayed the court to instruct the jury as follows: "That if the jury believe from the evidence, that the injury complained of by the plaintiff was caused by the fall of the plaintiff into a drain or ditch left open at night by contractors with said city for the grading of a street, and that said street for the time being

was in the possession or occupancy of said contractors, then the city is not liable in this suit." By the defendant's 6th bill of exceptions it appears, that the defendant prayed the court to instruct the jury as follows : "That a municipal corporation is not liable to third persons in damages for injuries occasioned by the carelessness or negligence of contractors with it or of their agents or servants. The remedy is against the contractor alone."

Each and all of these three last named instructions prayed by the defendant, it appears by the three last named bills of exceptions, the court refused to give to the jury. It is a principle of nearly universal acceptation in this country, that when a town is incorporated and is given control over the streets and walks within its corporate limits, and is empowered to provide the means to make and repair them, the corporation not only assumes this duty but by implication agrees to perform it for the benefit and protection of all, who may have occasion to make use of these public easements ; and that for failure in the discharge of this duty the corporation is responsible to the party injured. Cooley on Torts 625, notes 2 and 3; *Weightman* v. *Washington,* 1 Black 39 ; *Chicago* v. *Robbins,* 2 Black 418 ; *Nebraska* v. *Campbell,* 2 Black 590 ; *Springfield* v. *Le Claire,* 49 Ill. 476 ; *West* v. *The Trustees of the Village of Brockport,* 16 N. Y. 161, note and numerous other cases cited in the opinion of Judge Selden ; *Mayor, &c., of New York* v. *Furze,* 3 Hill (N. Y.) 612 ; 5 Selden 168 ; 2 Dillon on Mun. Corp. pages 911 to 915, and note 2 commencing at page 915 ; *Storrs* v. *Utica,* 17 N. Y. 104.

Judge Dillon in his work on Municipal Corporations in section 789 says : " It may be fairly deduced from the many cases upon this subject referred to in the notes, that in the absence of an express statute imposing the duty and declaring the liability, *municipal corporations proper* having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty. Such a duty and liability are considered to exist, without a positive statute, when the following conditions concur: 1. The *place* in question,

whether bridge, sidewalk, or street, must be one *which it is the duty of the corporation to repair or keep in a safe condition;* and this *duty* (to keep in repair) if not specifically enjoined, must arise upon a just construction of the charter or statutes applicable to the corporation. 2. This duty or burden must appear upon a fair view of the charter or statutes to be inferred, or rest upon the municipal corporation as such, and not upon it as an agency of the State, or upon its officers as independent public officers. (This however in general, appears sufficiently where the municipality sought to be made liable exists under a special charter or general act, which confers upon it peculiar powers and privileges as respects streets, their control and improvement, not possessed throughout the State at large under its general enactments concerning ways.) 3. The *power to perform the duty* of maintaining the streets in a safe condition by authority to levy taxes or impose local assessments for the purpose, must be (as it almost always is) conferred upon the corporation. Where the duty to keep streets in repair is in terms enjoined upon the corporate authorities and they are supplied with the means to perform it, there is little difficulty we think in holding the corporation liable on the general principles of the law without an express statute declaring the liability to a civil action by any one specially injured by its neglect to discharge this specific duty. But where the duty to repair is not specifically enjoined and an action for damages caused by defective streets is not expressly given, still both the duty and the liability, if there be nothing in the charter or legislation of the State to negative the inference, has often and in our judgment properly been deduced from special powers conferred upon the corporation to open, grade, improve and *exclusively control* public streets within their limits, and from the means, which by taxation and local assessments the law places at its disposal to make it discharge this duty.

"The municipal corporation is not an ensurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, if the streets (which includes sidewalks and and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes by night as well as by day, and

whether they are so or not is a practical question to be determined in each case by its particular circumstances. The ground of the action is either positive misfeasance on the part of the corporation, its officers or servants, or by others under its authority, in doing acts which cause the streets to be out of repair, in which case no other notice to the corporation of the condition of the streets is essential to its liability; or the ground of the action is the *neglect of the corporation* to put the streets in repair, or to remove obstructions therefrom, or to remedy causes of danger occasioned by the wrongful acts of others."

In the case of *Sawyer* v. *Corse,* 17 Gratt. 230, it was held according to the 7th and 8th sections of the syllabus as follows: " 7. A public officer is not responsible to third persons for the negligence or default of his official subordinates. 8. This principle of exemption from liability for the default of its officers is not extended to municipal corporations, where the authority, though for the accomplishment of objects of a public nature and for the benefit of the public, is one, from the exercise of which, the corporation derives a profit, or where the duty may be presumed to be enjoined upon the corporation in consideration of privileges granted." See the opinion of Judge Joynes in this case, who delivered the unanimous opinion of the court at pages 241, 242.

In the case of *The City of Richmond* v. *Long's adm'rs,* 17 Gratt. 375, it was held according to the 3d section of the syllabus as follows: " 3. Municipal corporations, in discharge of ministerial or specified duties assumed in consideration of the privileges conferred by their charter, are liable for the misconduct, negligence or omissions of their agents and this though there be the absence of special rewards." See also opinion of Judge Rives, who delivered the opinion of the court in this case, at pages 379, 380. Against the foregoing legal principles, see the case of *The City of Detroit* v. *Blackebys,* 21 Mich. 84, and also *City of Navasota* v. *Pearce,* 46 Texas 525. But see to the contrary of these two last named cases the dissenting opinion of Judge Cooley delivered in the said case of *The City of Detroit* v. *Blackebys,* 21 Mich.

After careful consideration of the authorities upon the sub-

ject it seems to me, that the decided weight of authority is against the principles held by the Texas and Michigan courts in the two last named cases; and that the principles laid down upon the subject in Cooley on Torts and Dillon on Corporations, which I have stated, are supported and sustained by the great weight of American authorities. Dillon in his work on corporations in section 791 says: " Whether *the duty* of maintaining the streets in safe condition for public travel and use is specially imposed on the corporation, or is deduced, in the manner before stated, it rests primarily as respects the public upon the corporation, and the obligation to discharge this duty can not be evaded, suspended or cast upon others, by any act of its own. Therefore according to the latter view, where a *dangerous excavation is made* and negligently left open (without proper lights, guards or covering) in a traveled street or side walk *by a contractor* under the corporation for building a sewer or other improvement, the corporation is liable to a person injured thereby, although it may have no immediate control over the workman and had even stipulated in the contract, that proper precautions should be taken by the contractor for the protection of the public and making him liable for accidents occasioned by his neglect. It is immaterial as respects the primary liability of the corporation in such a case, whether it has or has not inserted such a clause in its agreement with the contractor."

In the case of *Storrs* v. *The City of Utica,* 17 N. Y. 104, it was held . " A municipal corporation, owing to the public the duty of keeping its streets in a safe condition for travel, is liable to persons receiving injury from the neglect to keep proper lights and guards at night around an excavation, which it has caused to be made in the street, whether it has or has not contracted for such precautions with the persons executing the work."

In the case of the *City of St. Paul* v. *Seitz,* 3 Minn. 297, it was held, that "when the city undertakes the improvement of a street by grading or otherwise, the authorities are bound to take care what they cause to be done shall not endanger the safety of the public. The city is in all cases responsible for such dangers as are incident to, and consequent upon the nature of the work itself; while its liability in those dangers,

which result from an improper execution of the work, may be limited by the terms of the contract under which it is performed."

See also the *City of Detroit* v. *Corey*, 9 Mich. 165; *City of Springfield* v. *Le Claire*, 49 Ill. 476; *Chicago City* v. *Robbins*, 2 Black 418; *Lockwood* v. *Mayor, &c.*, 2 Hilton (N. Y.) 66; *Blake* v. *The City of St. Louis*, 40 Mo. 569; *The Mayor and City of Baltimore* v. *Pendleton and Harlan*, 15 Md. 12.

These cases all seem to support the decision in the case of *Storrs* v. *Utica*, 17 N. Y. 104, and the principles stated by Judge Dillon in said section 791, which I have recited above. The case of *Barry* v. *St. Louis*, 17 Mo. 121, seems to be overruled or departed from in principle by the case of *Blake* v. *St. Louis*, 40 Mo. 569. The case of *Painter* v. *Pittsburg*, 46 Pa. St. 221; S. C. 3 Am. Law Reg. (N. S.) 350 with note by Mr. Mitchell, is against the principle stated by Judge Dillon and the authorities cited which sustain it; but, as stated by Mr. Mitchell in his note, the ground, upon which the doctrine rests, "was apparently not urged in the argument and is not noticed by the court." In the case of *Barry* v. *St. Louis*, 17 Mo. 121, the latest New York case there cited is the case of *Bailey*, 2 Denio, 433; and the proposition, that the city is primarily liable for the defective or dangerous condition of its streets and should not be allowed in executing a work attended with danger to shift this responsibility by contract, does not appear to have been presented to the court. In an early case in California (*James* v. *San Francisco*, 6 Cal. 528) it was held, that there was no corporate liability, where the city was obliged to let the contract to the lowest bidder. There has been much controversy as to the liability of a municipal corporation for the *negligence or wrongful acts of contractors under it* in the execution of the work agreed to be performed; but says Judge Dillon in section 792 of his said work:

" Ordinarily, no person other than the one immediately or actually guilty of the wrongful act is liable therefor, except upon the ground that the relation of principal and agent, or master and servant, existed between the person or corporation sought to be made liable, and the person who did the act, or was guilty of the negligence, that caused the injury. In

other words the principle of *respondeat superior* does not extend to cases of independent contracts, where the party, for whom the work is to be done, is not the *immediate superior* of those guilty of the wrongful act, and has no choice in the selection of workmen, and no control over the manner of doing the work under the contract. Such is the general rule; but it is important to bear in mind, that it does not apply where the contract directly requires the performance of a work *intrinsically* dangerous, however skilfully performed. In such a case, the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract."

See notes 1 and 2 under said paragraph and section 792. Judge Dillon proceeds in section 793 to say:

" Accordingly, the later and better considered cases in this country respecting streets have firmly, and in our judgment, reasonably, established the doctrine, that where the work contracted for necessarily constitutes an obstruction or defect in the street of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor engaged to perform) is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract work and entirely the result of the negligence or wrongful acts of the contractor or his servants. In such a case the immediate author of the injury is alone liable."

In support of this principle Judge Dillon in note 1 to said section 793 cites *Robbins* v. *Chicago City*, 4 Wall. 657, 679, and cases there cited by Judge Clifford. Judge Clifford cites *Hole* v. *Railway Co.*, 6 Hurlst. & Norm. 497; *Ellis* v. *Gas-Cons. Co.*, 2 Ell. & Black. 767; *Newton* v. *Ellis*, 5 *Id.* 115; *Lowell* v. *B. & L. Railroad*, 23 Pick. 24; *Storrs* v. *City of Utica*, 17 N. Y. 104. See also on prior appeal, 2 Black., where *Scammon* v. *Chicago*, 25 Ill. 424 is on one point disapproved; *Storrs* v. *Utica*, 17 N. Y. 104, 1858; approving but distinguishing, *Pack* v. *Mayor &c.*, (injury by blasting) 8 N. Y. 222; *Kelly* v. *Mayor &c.*, (like case) 11 N. Y. 432. See also *Cincinnati* v. *Stone*, 5 Ohio St. 38, 1855; *Gourdier* v. *Cormack*, 2 E. D. Smith (N. Y.) 254; *Detroit* v. *Corey*, 9 Mich.

165, 1861, concurring in the result of *Storrs* v. *Utica; Spring-field* v. *Le Claire*, 49 Ill. 476, 1866; compare *Clark* v. *Fry*, 8 Ohio St. 358, 1858.

In the case of *Robbins* v. *Chicago*, 4 Wall. 657, Judge Clifford, who delivered the opinion of the court, at page 679 says:

"Where the obstruction or defect caused or erected in the street is purely collateral to the work contracted to be done and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect, which occasioned the injury results *directly* from the acts which the contractor agrees and is authorized to do, the person, who employs the contractor and authorizes him to do these acts, is equally liable to the injured party."

Obstructions consequent on the repair of streets create no liability, if there is no negligence. Cooley on Torts 626. In the case of *Kimball* v. *City of Bath*, 38 Me. 219, it was held, that "towns in making necessary repairs upon their streets and sidewalks may interrupt the public travel and obstruct them, without incurring any liability therefor. But ways undergoing repair should not be left in the night-time without precautionary means to give travelers warning of their danger." *Robbins* v. *Chicago City*, 4 Wall. 657. When the city undertakes the improvement of a street by grading or otherwise, the authorities are bound to take care, that what they cause to be done shall not endanger the safety of the public. *The City of St. Paul* v. *Seitz*, 3 Minn. 297.

But in addition to the general accepted law, as I have stated it, the 60th section of chapter 194 p. 58 of the Acts of the Legislature of 1872-3 provides: "That any person, who sustains an injury to his property or person by reason of a public road or bridge being out of repair, may recover all damages sustained by him by reason of such injury in an action on the case brought in any court of competent jurisdiction against the county, in which such road or bridge is. * * *Provided,* That if such road or bridge be in any incorporated city, town or village and under the jurisdiction of the corporate authorities thereof, then such recovery may be had against such corporation. And it shall be the duty of the proper authorities of such corporation to levy," &c.

. This section is taken from the 55th section of chapter 43 p. 279 of the Code of this State of 1868. Under the statute it was held by this court in the case of *Sheff et ux.* v. *The City of Huntington*, among other things: " 1. If a person is injured by. reason of a public road being out of repair the corporation, whose legal duty it is to keep the road in good repair, is liable to himf or damages, whether it had notice of such defect or not. 2. In such a case it is not necessary to allege and prove, that the corporation knowingly and negligently permitted the road or street to get out of repair."

. ˙ The case of *Griffin* v. *Town of Williamtown*, 6 W. Va. 312, seems to have been based upon the 55th section of chapter 43 of the Code of 1868 and the 6th section of chapter 15, Acts of 1868 (extra session). The said 6th section of said act of 1868 expressly requires the corporatian to keep all the streets and public roads lying within the same in good order and condition, &c. Although I do not think the question arises in this case, still I deem it proper to say after a more full examination of the subject, than I have heretofore had time and opportunity to give it, that my mind is not altogether free from doubt, whether under the provisions of section 60 of chapter 194 of the Code the county or corporation, as the case may be, should be held liable to a party injured in all cases by the failure to repair a public road or street without *notice* to the county or corporation of the defect, which caused the injury, or facts, from which notice thereof may reasonably be inferred, or proof of circumstances, from which it appears, that the defect ought to have been known to the county or corporation or to their officers having authority to act respecting it, and have been by them remedied. In other words is not negligence the basis of the right to recover ordinarily under said 60th section ? And is the county or corporation ordinarily responsible for more than reasonable diligence only to repair the defect or prevent accidents after the defect of the road or street is known or ought to have been known to it or to its officers having authority to act respecting it? See on this subject 2 Dill. on Corp. 2d ed. § 790 pp. 920, 921 and note 1 p. 921 and authorities there cited, also same book § 795 p. 927 n. 1 and authorities there cited. In intimating this present doubt, I do not mean to be under-

stood as intimating a fixed opinion, or that I am speaking for any member of the court but myself in this respect. A public road or street may be rendered defective and unsafe suddenly at night by storm or flood and the like; and the injury may be caused by the defect, before it can be known or remedied, &c. Mischievous or wicked persons may obstruct a public road or street in the night or daytime, and the injury complained of may occur, before the defect or obstruction can be known and remedied. The city, town or village may not have been invested with the means of keeping its streets in repair, &c.

The evidence in the case at bar tends to show, that Charles street, the street in the declaration mentioned, was one of the streets in the city of Wheeling, but the part of it where the injury to the plaintiff was incurred and for some distance was on a hillside and had never been regularly graded by the city, until just before the injury of the plaintiff the grading was commenced, though there were previously houses on the sides of the street occupied by families and close to that place and had been for years, and the street had been used along there by the people living thereon and perhaps others to walk over and to haul coal in wagons over for use of the people residing on said Charles street; that some time before the injury the city caused its surveyor to survey said street and lay it off for grading, and the city a short time before the injury of the plaintiff by contract in writing let the grading of said Charles street to three contractors, who agreed to execute and finish in every respect in a workmanlike manner to the satisfaction and acceptance of the street-commissioner of the city the grading of said street according to the established grade according to the specifications therein named and given, on the 15th day of November, 1874, and sooner if practicable.

The evidence also tends to show further, that the city-surveyor did said surveying and prepared said specifications, and that the contractors under their said contract did grade said street up to the place, where the plaintiff was injured and on both sides thereof, and on the day or day before the plaintiff was injured the said contractors under and by the directions of the said city-surveyor, who supervised and directed the work, made an opening across said street about six feet deep

below the grade (partly by grading and partly by excavation) and some five or six feet wide, in which was to be put by the defendant or some person for it a box-culvert of about two feet square, open at each end, to carry off the water flowing from the hill above, which was necessary and proper; that after said excavation or opening was so made, it was left on the night of the 2d day of November, 1874, open without proper lights, guards or covering, and in fact without any lights, guards or covering; and on the said night of the 2d day of November, 1874, while it was dark and foggy, the plaintiff while walking along on the graded part of said street with other ladies just behind her without knowing said excavation or opening was there and without seeing it because of the darkness fell into the said excavation or opening, and thereby her left arm was broken, and she was otherwise injured. It seems, that in 1867 the name of what is now Charles street was St. Charles street in the said city of Wheeling, and that the name of the street was changed by the city by ordinance in 1873 to Charles street. Hence in some parts of the evidence in the record there is some confusion as to the name, sometimes it is called St. Charles street and sometimes Charles street.

The 44th section of the charter of the City of Wheeling passed by the Legislature of Virginia March 11, 1836 provides, that "All taxes which the council are or shall be authorized to levy and collect, shall inure to the exclusive benefit of said city." And the 45th section of said charter provides, that "the council shall have authority within said city to lay out and cause to be opened any streets, walks, alleys, market-grounds and public squares, or to extend or widen the same, first having obtained title to the ground necessary for that purpose, and to graduate any street, walk, alley, market-ground or public square which is or shall be established within the said city; to pave or otherwise improve the same; to cause them to be kept open and in good repair, and generally to ordain and enforce such regulations respecting the same or any of them as shall be proper for the health, interest or convenience of the inhabitants of said city."

The council of defendant by its charter and the acts amendatory thereof is invested with extensive powers of taxation

upon property, licenses, &c., and with authority to pass all ordinances (not repugnant to the Constitution of the United States or of this State) which shall be necessary or proper to carry into full effect any power, authority, capacity or jurisdiction, which is or shall be granted to or vested in the city, &c., and to enforce any and all of their ordinances by reasonable fines and penalties, &c.    In fact the city is invested with many large powers not necessary to refer to in this case.    It seems to me after careful examination of said three instructions as contained and shown in said bills of exceptions Nos. 3, 5 and 6, that under and according to the weight of authority and reason the said circuit court did not err, in refusing to give to the jury the said three instructions asked by the defendant.

By the defendant's 4th bill of exceptions it appears, that the defendant asked the court to instruct the jury: "That if the jury believe from the evidence, that the injury complained of by the plaintiff was caused by the falling of the plaintiff into a natural drain on Charles street, while the street was being graded by contractors with the city, then the city is not liable in this suit."    Which instruction the court gave, but added thereto the words "providing that the operation of grading had not the effect of making the place more insecure and dangerous"; and thereupon the defendant excepted to the latter part of the instruction as given by the court.    In the case of *The City of St. Paul* v. *Seitz*, 3 Minn. 297, Judge Flandrau in delivering the opinion of the Court at pages 303 and 304 says : "There is a positive duty resting upon a municipal corporation to keep its streets in such a condition as not to endanger the safety of travelers.    This however must be taken with some qualification.    It does not follow, that because private individuals lay out their lands lying within the limits of an incorporated city into lots and streets, that a duty at once attaches to the corporation to put such streets in order and render them safe for the passage of travelers.    Such a rule would place the city very much at the mercy of individuals in respect to its improvements and expenses and cannot be admitted.    We do not think such is the law.    The act of dedication by the individual would confer upon the public the undoubted right to use the street for the purposes of travel; yet

if the natural formation of the land rendered it dangerous of passage, it cannot be said to be the fault of the city corporation either in its origin or its continuance, and travelers, who frequent such dangerous localities, must exercise sufficient care and prudence in passing them to insure their safety.  It is the peculiar province of the city-authorities to determine, at what time the necessities of the city require, or its finances or the property to be charged will justify, the improvement of streets; and when they decide to act, the work may be one of a partial or complete character, as in opening the way to pedestrians alone or to general travel; but in any event, when the city undertakes the improvement of a street whether by grading or otherwise, the authorities are bound to take care, that what they cause to be done shall not endanger the safety of the public.  And here we wish to be clearly understood in making the distinction between such dangers, as are incident to and consequent upon the nature of the work itself, and those which result from an improper execution of it.  The former the city is in all cases responsible for; while its liability for the latter may be limited by the terms of the contract, under which the work is performed.  For greater certainty in the statement of this distinction we will illustrate by reference to two cases recently adjudicated in the Court of Appeals in the State of New York, in one of which a city corporation was held responsible for an injury sustained in consequence of a street-improvement, and in the other the corporation was acquitted from liability." The judge then cites and explains *Storrs* v. *The City of Utica*, 17 N. Y. 104 and *Pack* v. *Mayor, Alderman, &c. of the City of New York*, 8 N. Y. 222.

In the last named case the city made a contract with one Foster to furnish all the material and regulate a street in the City of New York.  Foster sub-let to one Riley all the blasting of rocks on the job.  Riley in carelessly and negligently conducting a blast injured the wife and killed one of the children of the plaintiff.  In this case it was held, that the city was not liable to the action for damages.  In the case of *Storrs* v. *The City of Utica*, 17 N. Y. 104, the city decided to make a sewer in Genessee street in that city, and let the work out to one Shippey.  The contractor allowed the ditch to remain open and unguarded in the night-time, and the plaintiff drove

a wagon into it and was injured.  In this case it was held, that the city was liable to the action for damages for the injury.  Judge Flandrau at page 307 in speaking of the two last named cases further says:

"These two cases clearly define the distinction, which we wish to present, between causes of action, which arise from the negligence of the contractors in the manner of performing such work, which makes them alone liable, and causes of action, which arise *by reason of the very subject of the contract,* when there is no question about the manner in which it ·is executed, in which the corporation is liable.  In the first case the corporation is guilty of no fault; in the last by causing an obstruction to be placed in the street and thereby rendering its passage unsafe, it is derelict in duty in not surrounding it with the necessary safe-guards."

In the case of *Hulson and wife* v. *The Mayor &c. of the City of New York,* 5 Seld. 163, Judge March in delivering the opinion of the court at page 302 says:  "We would not be understood to go the length of deciding, that whenever a street is opened by the corporation on paper or by proceedings under the statute, it is their duty forthwith to regulate and pave it.  There are several steps in the matter, all which, we apprehend, are in the legislative discretion of the corpora-tion.  It belongs to them in the exercise of their discretion to determine, 1st, when a street shall be actually opened for the accommodation of the public; 2d, how it shall be worked whether as a road or a street; 3d, when it shall be regulated and the curb and gutter set; and 4th, when it shall be paved; but after they have opened it for the public accommodation, and by their acts invited the public to travel over it, the duty then becomes absolute to keep it in repair.  There is solid reason in holding them to be thus bound."

See also *Kimball* v. *City of Bath,* 38 Me. 219, 221, 222; *City of Richmond* v. *Long's adm'rs,* 17 Gratt. 379, 380; *The City of Chicago* v. *John Martin et ux.,* 49 Ill. 241; *Clark* v. *Fry,* 8 Ohio St. 358, first section of the syllabus.

The substance of the plaintiff's complaint, as I understand the declaration, is, that the defendant made or caused to be made on Charles street (one of the public roads or streets of the defendant) an opening in said street for the purpose of

constructing a sewer or culvert crossing said street, which said opening on the 2d of November, 1874, and prior thereto had been in an unsafe and dangerous condition for want of being properly guarded and protected, of which the defendant had reasonable notice, yet the said defendant regardless of its duty in this respect negligently, &c., permitted and suffered the said road to be out of repair and suffered said opening to be and remain uncovered, unguarded, unprotected and insecure to the great danger of persons passing along said road, so that by means of the premises, and by reason of the said road being defective and out of repair, and for want of a sufficient covering and protection to the said opening the said plaintiff who was then passing in and along said road, in the exercise of ordinary care, necessarily and unavoidably slipped and fell down and into said opening and thereby the left arm of the plaintiff was then and there broken and thereby she, the plaintiff, then and there received other great and serious injuries, and she the said plaintiff became and was sick, sore, lamed, diseased and disabled, &c., and so remained from that time until the present, &c.

While some of the evidence tends to show, that there was a natural drain on said street at or near the said opening or pit across the said street made by the contractors, as before stated, and for the purpose, which I have before stated, the evidence tends to prove, that said opening or pit as made, and as it was, when plaintiff fell into it and was injured, was not made by a natural drain except perhaps in part, but was made by the contractors principally, if not altogether, by the direction of the defendant's city-surveyor by grading the street on both sides of it, and by excavation for the purpose of putting in it a wooden culvert. Under these circumstances I think, that if the court had given the said instruction of the defendant, as asked by it, without proper addition, it might have tended to confuse or mislead the jury. The addition to the instruction asked and given by the court was no doubt intended as a qualification of the instruction asked by the defendant. The instruction asked and given taken in connection with the addition thereto, as given by the court, may fairly be construed to mean this, viz: That if the jury believe from the evidence, that the injury complained

of by the plaintiff was caused by the falling of the plaintiff into a natural drain on Charles street, while the street was being graded by contractors with the city, then the city is not liable in this suit, unless the fact of grading had the effect of making the place (that is the said street at said natural drain) more insecure and dangerous, than it was, before the grading was done. The addition to the instruction prayed is not as full or as well qualified and guarded as it probably should have been ; but as there is no evidence whatever tending to show, that the opening or pit in the street, into which the plaintiff fell and was injured, was in any manner or way guarded or protected so as to give notice or put passers along the street on their guard as to such opening or pit, and as it appears from the evidence without any question or doubt, that the plaintiff fell into said opening or street in the evening after seven o'clock, and after and while it was dark as well as foggy, I am unable to see, how the defendant could have possibly been prejudiced by said addition made by the court to said instruction as given. But I shall say something more upon this subject in considering the questions arising under bill of exceptions No. 7.

By bill of exceptions No. 7 it appears, that the court against the objections of the defendant instructed the jury as follows : " That a municipal corporation is by statute liable to any person, who sustains injury to his person or property by reason of a public road within the jurisdiction of the corporate authorities being out of repairs. If the jury find, that on or about the 2d day of November, 1874, the defendant was engaged in and about the grading of Charles street in said city ; that said street was at the time a public road and within the jurisdiction of the council of the city ; that in the progress of the work of grading an excavation was made and left in said street ; that by reason of said excavation the said street was out of repair ; that the plaintiff while passing along the said street on foot in the exercise of ordinary care by accident stepped and fell into said excavation ; that the said fall was occasioned by the street being so out of repair ; and that by reason of said fall she sustained an injury to her person, she is entitled to recover in this action. And this is so, although the jury may find, that the work of grading said street was

let out to contractors, by whom or by whose agents the actual work was done, if they further find, that the excavation was a necessary or contemplated feature of the contract for said grading, or that in the progress of the work it was made under the direction of the city or one of its officers authorized to give such direction."

As we have seen, Cooley in his work on torts at page 626 says : " Obstructions consequent on the repair of streets create no liability, if there is no negligence." In the case of *Kimball* v. *City of Bath*, 38 Me. 219, Judge Rice in delivering the opinion of the court at pages 221 and 222 says : " Towns are not only authorized but required by law to repair their public ways, including streets and side-walks, so that they be safe and convenient for those who may have occasion to pass and repass upon them.    To do so effectually, it may be necessary to break up and remodel both the bed of the streets and the sidewalks, and at such times the public are necessarily subjected to some degree of inconvenience and insecurity.    For such necessary interruption of travel and inconvenience to the public towns are not liable.    But while for the purpose of repairs they may thus break up and temporarily obstruct the passage over their public ways and sidewalks, they are not authorized to leave their streets or sidewalks, while undergoing repairs, in such a condition as unnecessarily to expose those who may pass upon them to inconvenience or danger.    At such times ways should not be left during the night without some temporary railing or some means of protection, or some beacon to warn passengers against such uncommon danger.    By neglecting to adopt such reasonable precautionary measures for the safety of citizens and travelers towns are equally culpable, and as liable as they are, when their ways are permitted to become unsafe from want of repairs.    Any other rule would enable negligent or vicious town-officers to set pitfalls for the unwary with impunity." *Robbins* v. *Chicago City*, 4 Wall. 657 ; *The City of Chicago* v. *Martin et ux.*, 49 Ill. 241 ; *The City of Saint Paul* v. *Seitz*, 3 Minn. 297 ; *Clark* v. *Fry*, 8 Ohio St. 358 ; *Hutson* v. *The City of New York*, 5 Sandf. 302.

In the case at bar it does not distinctly appear, when or how the said Charles street became one of the streets of the

defendant, whether by dedication or condemnation ; but I think it is quite clear, that at the time and for some years, before the plaintiff was injured, it was one of the streets of the defendant and was at that time and for some time before used by the people living on said street and perhaps others as a matter of right. Some of the evidence tends to show, that the defendant's street-commissioner had at some time or times prior to the injury of the plaintiff and prior to the time the defendant commenced to grade said street, as I have before stated, worked on said street with the city-chain-gang. But I think the evidence tends strongly to show, that the defendant had never commenced to grade and improve said street for regular travel until on or about the 30th of September, 1874, about a month prior to the time when the plaintiff was injured, and at that time the defendant let out the grading of said street to contractors, and from about that time the grading of said street continued regularly until a short time after the plaintiff was injured, when it was completed. Whether the said street of defendant was opened by the defendant on paper or by condemnation or by dedication, it can not be maintained or held under the authorities, which I have cited, or said section 60 of chapter 194 of the Acts of 1872-3 (*ubi supra*) upon any reasonable principle, that it was the duty of the defendant forthwith to regulate and grade it, or that the defendant, when it commenced to improve said street by grading, &c., had not the right to temporarily obstruct said street, so far as necessary for the purpose of grading and putting it in convenient and safe condition for the use of the public without liability for such necessary interruption of travel and inconvenience to the public. While for the purpose of grading such street the defendant might temporarily obstruct the passage over the same, it would not be authorized to leave the street, while undergoing such improvement, in such a condition as unnecessarily to expose those, who might pass upon it, to inconvenience or danger. At such a time the street should not be left without protection or guard or beacon especially at night to warn passers against such uncommon danger. If such reasonable precautionary measures are not adopted for the safety of the citizens and travelers, the city is as culpable and liable as it is, when it permits one of its graded

streets to become unsafe for want of repairs. The same principles necessarily apply, where the defendant temporarily obstructs the passage of travel &c., over one of its graded streets in making necessary or proper repairs thereof. And the same principles apply, where such temporary obstruction is made by contractors, who contract with the city to do the work ; or the contractors are directed by an officer or officers of the city authorized by the city to give such direction, to do the work, which causes the obstruction, and the work is accordingly done, and the work contracted to be done or so directed to be done necessarily renders the street unsafe and dangerous for passage.

The foregoing being correct views in principle, the last named instruction should have been qualified in accordance therewith, strictly speaking. But I am unable to see how the defendant could possibly have been injured in this case by the failure of the court to so qualify said instructions or either of them, for the reason that there is no evidence in the case tending to show, that there was any protection, guard or beacon left or made at said opening or pit, nor is it even pretended or claimed, that there was any such evidence.

By the said bill of exceptions No. 7 of defendant it further appears, that the court further instructed the jury as follows: " And although the jury may find, that said Charles street was not at the date indicated a public road within the meaning of the statute quoted, yet if they find that it was situated within the corporate limits and within the jurisdiction of the corporate authorities of the city ; that the city through its proper agents undertook to open and grade the same as and for a public street, and in that view contracted with third persons to do the needed work ; that in progress thereof the defendant through its authorized agent directed the person so contracting to dig and open an excavation therein for the purpose of making a culvert, or that such excavation was so dug and opened ; that the street was graded and reasonably fit for travel except at the place of such excavation ; that the excavation constituted a defect in said street of such a nature, as to make it unsafe or dangerous for persons to pass along on foot in the absence of lights or guards or other means of protection ; that no lights or guards or other means of pro-

tection were placed at or near the excavation, and that the plaintiff at the time indicated, and in the manner stated, and while in the exercise of ordinary care was injured in person, she is entitled to recover here."

In this case the evidence tends to show, that the defendant at the time, when the plaintiff was injured, and for some time before was treating and had treated said Charles street as one of the streets of the city by grading it &c. If the authorities of a city have treated a place as a public street, taking charge of it and regulating it, as they do other streets, and an individual is injured in consequence of the negligent and careless manner, in which it is done, the corporation cannot, when it is sued for such injury, throw the party upon an enquiry into the regularity of the proceeding by which the land became a street, or into the authority by which the street was originally established. *Mayor v. Sheffield*, 4 Wall. 189, 194 and 195. Applying this principle in connection with the other principles before announced, upon authority and reason I do not perceive error in this instruction, except that part of it immediately after the word culvert, which is in these words, to-wit: " or that such excavation was so dug and opened." If the court had used the conjunction " and " instead of " or " in this connection, the instruction would have been correct; but that portion of the instruction in the connection used is manifestly erroneous in this case under the authorities I have cited. I think it probable, that this was a clerical error in framing the instruction, and that the court intended to use the word " and " instead of " or," and that error was inadvertently unobserved.

It further appears by said 7th bill of exceptions, that the court instructed the jury further as follows: "Should the jury find for the plaintiff, they are to determine the amount of damages to which she is entitled. No rule of measurement can be laid down by the court. They will look at the case as developed by the evidence, at the injury, its nature, extent and probable consequences, and the pain and suffering endured in consequence thereof, and any expense she may have incurred in and about her cure, and give such verdict as they in the exercise of a sound judgment may deem her entitled to as a compensation therefor." To this instruction as well as

the preceding instructions in defendant's said bill of exceptions number seven the defendant objected. I am free to say, I do not like the language, in which a part of this instruction is couched. The language of the court to the jury, that "no rule of measurement (evidently meaning measurement of damages in such a case) can be laid down by the court," is equivalent to saying to the jury, that the law furnished no legal measurement save the discretion of the jury in such a case. I do not understand this to be a sound exposition of the law in a case brought against a municipal corporation for an injury sustained by an individual by reason of such corporation failing to keep one of its streets in repair, &c. The case would be exceptional indeed, when the plaintiff could properly recover vindictive, punitive or exemplary or more than actual or compensatory damages. Under the language of the court as given to the jury the jury might well have been misled into the belief, that they were at liberty and had the discretion to give exemplary or vindictive damages against the defendant and that the law furnished no legal measurement for damages in such cases. The city is not a spoliator and should not be visited by vindictive or punitive damages. Whatever may be the rule in cases for injuries as against railroad companies and corporations of a private character and without reference to them, it seems to me, that in cases against municipal corporations for injuries sustained by individuals by the failure of such municipal corporations to keep their streets in repair and the like, there is a rule for the measurement of the damages, which the plaintiff is entitled to recover, and by which the jury must be governed in the ascertainment of such damages, and that rule is substantially, that the damages must be measured by the loss of time during the cure and expense incurred in respect of it, the pain and suffering undergone by the plaintiff and any permanent injury, especially when it causes a disability for further exertion in whole or part and consequent pecuniary loss. Vindictive or punitive damages ought not to be recovered in cases of this character. *City of Chicago* v. *Langlass et ux.*, 52 Ill. 256; *The City of Chicago* v. *Martin et ux.*, 49 Ill. 241, 246; 2 Dill. on Corp. § 789, p. 919.

It is true, that the latter part of this instruction is better

and, I think, would not of itself be objectionable; but I do not think, it cures or changes the meaning of that, which immediately precedes it so as to make it clear to the jury, that they must confine themselves to actual or compensatory damages. Taking all the parts of this instruction together, it seems to me, that they are so worded, that in their connection one with the other and as a whole they tended to confuse and mislead the jury in making up their verdict as to the damages they might lawfully award. I think it would be a dangerous precedent for this Court to affirm this instruction as given.

I deem it unnecessary to consider the defendant's eighth exception or take further notice of it than to say, that it shows, that after the verdict was rendered the defendant moved the court to set aside the verdict of the jury, upon the ground that it was contrary to the law and evidence, and that the damages were excessive, and of newly discovered evidence.

It is argued by the counsel of the defendant, that the 60th section of chapter 194 of the Acts of the Legislature of 1872-3 is unconstitutional; but under the view, which I have taken of the law applying to the defendant as a municipal corporation, it is unnecessary to decide that question in this case. But I deem it not improper for me to refer to the fact, that in the case of *Sheff et ux* v. *The City of Huntington*, 16 W. Va. 307, this Court in its opinion and decision treated said 60th section of said 194th chapter of the Acts of 1872-3 as being constitutional and valid.

As already stated at the first trial of this case the jury awarded the plaintiff $1,350.00 damages; and at the last trial the jury gave the plaintiff $3,666.66⅔, which is certainly a large increase. How far the instruction of the court in regard to the subject of damage effected this increase of damages, or whether it did or did not in fact cause the increase in whole or in part, of course I cannot determine; but that the instruction as given by the court may have had that effect, I think is clear. I therefore cannot see or say, that said instruction as given by the court could not possibly have misled the jury to the prejudice of the defendant.

The verdict of the jury was rendered in this case on the 22d day of May, 1878, and the judgment of the court was rendered upon the verdict on the 29th day of August, 1878;

and it gives the plaintiff interest on the amount of the verdict from the date of the verdict instead of from the date of the judgment. This was error. *Hawker* v. *B. & O. R. Co.*, 17 W. Va.; *Fowler* v. *B. & O. R. Co.*, 18 W. Va. The judgment should have been for interest from the date of the judgment. However under the view, which I have taken of the case, the error is not important, as the case will have to be remanded for a new trial, and the error will not likely occur again.

Entertaining the views I have expressed, there is error in the judgment of the circuit court of Ohio county rendered in this cause on the 29th day of August, 1878, and the same must therefore be reversed and annulled, and the defendant in error recover against the plaintiff in error its costs expended about the prosecution of its writ of error and *supersedeas* in this court. And this court proceeding to render such judgment in the case, as the circuit court of said county of Ohio should have rendered, it is considered that the verdict of the jury rendered in this cause on the 22d day of May, 1878, by said circuit court be, and the same is, hereby set aside ; and a new trial is granted and awarded in the cause, the costs of the last trial by jury to abide the event of the suit ; and this cause is remanded to the said circuit court for the county of Ohio for such further proceedings therein to be had, as are in accordance with the principles settled in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.